Wright *et al. v.* Mack *et al.*

No. 11,110.

WRIGHT ET AL. *v.* MACK ET AL.

VOLUNTARY ASSIGNMENT.—*Refusal of Trustee to Sue.—Collusion.—Assignor and Trustee.—Creditors.—Joinder.*—Where, under a voluntary assignment by an embarrassed or failing debtor of all his property, in trust for the benefit of all his *bona fide* creditors, a cause of action accrues to the trustee, of or concerning the trust estate, which he wrongfully refuses to enforce by suit, or where there is apparent collusion between such assignor and his trustee, by means of which the trust property is wasted or sacrificed, the creditors of the assignor, as the beneficiaries of the trust, may sue in their own names, and, having a unity in interest in the object of the suit, they may join in the same complaint and maintain a joint action.

SAME.—*Embarrassed or Failing Debtor.—Preferred Creditor.—Chattel Mortgages.—Wrongful Conversion of Trust Property.—Collusion between Assignor, Trustee and Mortgagees.—General Creditors.*—An embarrassed or failing debtor, before the execution of a voluntary assignment of *all* his property in trust for the benefit of *all* his *bona fide* creditors, may lawfully mortgage his property to secure his valid and subsisting debts to some of his creditors, in preference to his other creditors. But where, in such case, after the execution of his voluntary assignment, the acts of the assignor and his mortgagees, in collusion with his trustee, are such as show the wrongful conversion of the trust property from the purposes of the trust, they and each of them will be liable to the general creditors, as beneficiaries in the trust, for their damages resulting from such conversion.

PERSONAL PROPERTY.—*Sale on Execution.—Subject to View.—Lots and Parcels.*—Under section 751, R. S. 1881, personal property can not be sold on execution, unless it is present and subject to the view of those attending the sale, and it must be sold at public auction, in such lots and parcels as are calculated to bring the highest price.

SERVICE OF SUMMONS.—*Sheriff's Return.—Default.*—Where the sheriff's return to the writ of summons fails to show that it has been served on the defendant, or, under section 309, R. S. 1881, upon some one as the agent of the defendant, the plaintiffs are not entitled to a default against such defendant.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellants.

*H. C. Dodge* and *O. Z. Hubbell,* for appellees.

HOWK, C. J.—In this case the appellants, the plaintiffs be-

low, have assigned here as errors the following decisions of the circuit court:

1. In sustaining the demurrers of the appellees, except Eva Mack, to the complaint of the appellants; and,

2. In overruling their motion to default the appellee Eva Mack.

In their complaint the appellants alleged the following facts:

" 1st. That on the 14th day of November, 1882, the defendant Michael K. Weaver, being a merchant engaged in the drug business at the city of Elkhart, in said county, and being in failing circumstances, made an assignment in due form, under the voluntary assignment statutes of this State, of all his property to the defendant John M. Minnich, for the benefit of all his creditors, and that said Minnich at once qualified as such assignee, and entered on the duties of said trust, and is still so acting.

" 2d. That at the time said assignment was made these plaintiffs were, and still are, creditors of said Michael K. Weaver, severally, for the respective sums set opposite their names in the caption of this complaint.

" 3d. That twelve days before said assignment was made said Weaver mortgaged, by several separate mortgages, all his property, consisting of drugs, medicines, paints, oils, varnishes, furniture and store fixtures, to said defendants, Mack (his sister), Dodge (his attorney) and Kilmer (his uncle), to secure the aggregate sum of about $1,400, and said mortgages were at once duly recorded, so as to make an apparent lien upon said property.

" 4th. That shortly after said assignment was perfected said mortgagees commenced foreclosure proceedings on said mortgages in this court, making said Weaver and Minnich sole defendants, who voluntarily appeared without service of process and allowed foreclosures to be taken on each of said mortgages for an aggregate amount of about $1,400.

" 5th. That said mortgagees caused orders of sale to be is-

sued upon said decrees, and caused said goods to be sold thereon on the 14th day of January, 1883.

" 6th. That at the time of said sale said goods remained in the store of said Weaver, No. 97 Main street, at Elkhart, Indiana, the same as when the assignment was made; that said goods were appraised under the assignment in accordance with the statute, at the sum of $5,700, and they were worth that sum at the time of said sheriff's sale; that said Minnich, although at his son's store in the same block, was not present at the sale; that several hundred dollars' worth of said goods at the time of sale were in the basement cellar of said store, and not present in the store where said sale was made, and were not subject to the view of those attending said sale; that said sheriff, by the express command of said Mack, Dodge and Kilmer, then and there given, announced that he would offer all the goods covered by said mortgage in bulk; these plaintiffs, by their agents, then requested said sheriff to offer said goods in parcels, and said agent then announced that he would bid on the iron safe and show-cases, and on everything else that would sell cheap enough; but said sheriff, acting under said command, refused to offer said goods in parcels; thereupon said Dodge, for himself and as attorney for said Mack and Kilmer, announced that one barrel of alcohol, one barrel of linseed oil, three show-cases, and all goods held on commission would be excepted from said sale; and thereupon said sheriff repeated said announcement, and then offered the balance of said goods for sale as an entirety, and said Dodge, for said Mack, bid therefor the sum of $1,000, and there being no second or other bid (although more than twenty persons were present and intending to bid), said property was sold to said Eva Mack for $1,000.

" 7th. That it was stated by no one what particular barrel of alcohol or oil out of several in the store, nor which three out of the five show-cases, nor what or how much goods were held on commission and excepted from said sale; nor was the

fact announced that a large part of the goods offered for sale were in the cellar and out of view; nor did any of the bidders present know any of those facts except said Mack, Dodge and Kilmer.

" 8th. That said goods were sold in the manner aforesaid by said Mack, Dodge and Kilmer, for the purpose of stifling all competition, and thereby getting the goods at one-sixth their value for the benefit of themselves and said Weaver.

" 9th. That said Eva Mack, by virtue of such pretended sale, at once took possession of said goods of the value of $5,700, and paid off said Dodge and Kilmer, and placed said Weaver (her brother) in possession of said store and goods, ostensibly as her agent, to buy and sell as usual; and said Mack at once took possession and assumed ownership of said goods, and has since been selling at retail the same as if she owned said goods, and she at once returned to her home in Dakota Territory.

" 10th. That outside of the goods so converted by Mack, Dodge and Kilmer, there will not be enough of assets to pay the expenses of the assignments.

" 11th. That these plaintiffs at once notified said Minnich of all the facts heretofore detailed, and requested him to bring suit for the value of said goods, which he refused to do. They also requested permission to bring suit for him in his name as assignee, and offered to indemnify him against all attorney's fees, costs, damages and expenses, but after consultation with said Dodge, who was acting as his legal adviser and attorney, and also as the attorney for said Mack, Kilmer and Weaver, he refused to allow these plaintiffs so to carry on suit in his name, and, therefore, he is made a defendant.

" 12th. The plaintiffs bring this suit on behalf of themselves and of all the other creditors of said Michael K. Weaver who may wish to join herein.

" 13th. The plaintiffs pray for a decree and judgment for $6,000 against said Mack, Dodge and Kilmer, and an alter-

native judgment for $6,000 against said Minnich in case a judgment can not be had against or be collected of said Mack, Dodge or Kilmer, and a decree that the amount realized be paid to the assignee of said Weaver to be distributed according to law."

To the foregoing complaint the appellees Kilmer, Dodge, Weaver and Minnich severally demurred upon the ground that it did not state facts sufficient to constitute a cause of action "against each of them separately." This demurrer was sustained by the court, and the appellants excepted, and, declining to amend or plead further, judgment was rendered against them for appellees' costs.

The first question discussed by the appellants' counsel, in his brief of this cause, is thus stated: "Can the creditors of Weaver maintain this suit?" There can be no doubt, we think, that if the appellee Minnich could have maintained an action against his co-appellees, or any of them, upon or by reason of the facts stated in the complaint, the appellants as creditors of the appellee Weaver, upon the showing made in the *eleventh* clause of the complaint, could maintain the same or a similar action. Under Weaver's voluntary assignment of all his property for the benefit of all his creditors, the appellee Minnich, as assignee, became the trustee of a trust, of which the appellants and other creditors of Weaver were the beneficiaries. If a cause of action accrue to the trustee, of and concerning the trust estate, which he wrongfully refuses to enforce by suit, or if the facts charged show collusion between the insolvent assignor and his trustee, by means of which the trust property is wasted or sacrificed; in either case, as it seems to us, the creditors of the assignor, as the beneficiaries of the trust, may sue in their own names. Thus, in Story's Equity Pleadings, section 516, it is said: "Where a person has become a bankrupt, and assignees are appointed, neither he, nor any of the creditors can ordinarily maintain a suit against any debtor to his estate, or to reduce any of his property into possession; for the right belongs to the as-

signees. But if the assignees should collude with the other party; or should refuse to bring a suit for the benefit of the bankrupt and of his estate, then, in such case, the bankrupt, or any creditor may do so." See, also, on this subject, Story Eq. Pl., sections 178, 227, 514 and 515.

Under the decisions of this court, the creditors of Weaver, having a unity in interest as to the object to be attained by the suit, might properly join in the same complaint and maintain their action together. *Robbins* v. *Sand Creek Turnpike Co.*, 34 Ind. 461 ; *Strong* v. *Taylor School Township*, 79 Ind. 208.

But the controlling question, in this case, is this : Does the complaint state facts sufficient to constitute a cause of action in favor of the appellants and against the appellees? We are of opinion, that this question must be answered in the affirmative. It will be seen from the complaint, that Weaver was a merchant in failing or embarrassed circumstances ; that only twelve days prior to the execution of his voluntary assignment, chattel mortgages were given by him upon all his property and stock in trade, of the alleged value of $5,700, to secure the sums, in the aggregate, of $1,400; and that these mortgages were thus executed by Weaver, one to his sister, Eva Mack, one to his uncle, Kilmer, and the other to his attorney, Dodge. Of course, under the law of this State, Weaver had the right to execute these mortgages, and the mortgagees had the right to accept them, notwithstanding the fact that he was then in failing circumstances, and even if the mortgagees had knowledge of such fact. If the mortgage debts were valid and subsisting debts of Weaver, and their validity is not called in question by the averments of the complaint, he had the right to secure those debts, to the exclusion or in preference of his other creditors, and the mortgagees might lawfully accept such securities. But, conceding this to be true, we are of opinion that the subsequent acts of the mortgagor and mortgagees, and of the trustee Minnich, under the voluntary assignment, in relation to the trust

property, as alleged in the complaint, were such as to subject them and each of them, as well as the assignor, to liability in damages as and for the wrongful conversion of the trust estate, in favor of all the beneficiaries in such trust. The voluntary assignment by Weaver of all his property to Minnich, upon its face at least, was executed by the assignor for the benefit of all his creditors. But when it is construed in connection with the other facts alleged, precedent and subsequent, it is difficult, if not impossible, to avoid the conclusion that the voluntary assignment was in fact executed, not for the benefit of Weaver's creditors, but for the purpose of saving and securing to him or for his use, under the forms of law, all the assigned property free from the claims of his general creditors.

As the facts are stated in the complaint, and admitted to be true as the case is now presented, the execution of the chattel mortgages by Weaver to his sister, his uncle and his attorney, his voluntary assignment, a few days afterwards, of all his property to Minnick, nominally, at least, for the benefit of all his creditors, the foreclosure of the chattel mortgages, shortly after the assignment, upon the voluntary appearance, without process, of Weaver and Minnich, the issue of orders of sale upon the foreclosure judgments, the sheriff's sale of the trust property, as an entirety and not in parcels, upon the commands of the sister, the uncle and the attorney of the assignor Weaver, in the absence of and without objection from the trustee Minnich, but in denial of the request of the appellants, beneficiaries in the trust, for a sale of the goods in parcels, the sale of such goods as an entirety, for but little more than the one-sixth part of their appraised value, to the sister of the assignor, and the failure and refusal of the trustee Minnich, upon consultation with his attorney and legal adviser, who was the attorney also of the assignor and the mortgagees, to take any legal steps in the interest of the appellants, who were beneficiaries in the trust, or even to

allow them to use his name, as trustee, in bringing suit, when they offered to indemnify him against all attorneys' fees, costs, damages and expenses; each and all of these facts seem to constitute parts merely of a single scheme or transaction, wherein each of the appellees performed his or her assigned part. The object and purpose of this scheme or transaction, as shown by the averments of the complaint, seem to have been the wrongful conversion of the trust property from the purposes of trust, and the saving and securing of such property free from the claims and demands of the general creditors of Weaver. The complaint clearly shows, as we construe its allegations, the collusion of the appellees in the accomplishment of such object and purpose.

In section 751, R. S. 1881, it is provided as follows: "Personal property shall not be sold unless the same shall be present and subject to the view of those attending the sale; and it shall be sold at public auction, in such lots and parcels as shall be calculated to bring the highest price."

Applying this section of the statute to the averments of the complaint under consideration, it is very clear that the sheriff's sale of the trust property to Eva Mack was invalid and void. Thus, in *Murphy* v. *Hill*, 77 Ind. 129, in speaking of a sheriff's sale of personal property, this court said: " The fact that the property was not present at the place of sale was of itself sufficient to invalidate the sale. The statute expressly requires that personal property shall not be sold unless it is present and subject to the view of those who attend the sale. 2 R. S. 1876, p. 218, section 469; *Gaskill* v. *Aldrich*, 41 Ind. 338. This was the rule at common law. Freeman Executions, section 290."

Our conclusion is that the appellants stated a cause of action against the appellees in their complaint, and that the demurrer thereto ought to have been overruled.

The second error assigned presents the question, whether or not the appellants were entitled to a default against the

appellee Eva Mack? Of course, the answer to this question depends upon the answer which must be given to the further question, whether or not the record shows any valid or legal service of process in this cause on Eva Mack? If the record shows such service of process on her, the appellants were entitled to have her defaulted; but if it fails to show any such service of process on her, no default could be entered against her. The summons in the case was returned as to her by the proper sheriff, over his signature, as follows: "The within named Eva Mack not found in my bailiwick." Immediately following this return, there appears in the record a certificate, also signed by the proper sheriff, as follows: "I hereby certify, that said Weaver above named as served was at said time the agent and clerk of said Mack, in charge of her store at No. 97 Main street, Elkhart, Indiana, and the said Eva Mack was and is a non-resident of Indiana."

Conceding that this certificate constituted a part of the sheriff's return to the summons in this case, it seems clear to us that this return wholly fails to show any valid or legal service of the summons on Eva Mack, or on Weaver as the agent or clerk of Eva Mack, under the provisions of section 309, R. S. 1881. Weaver was a defendant in this suit, and the service of the summons as to him, referred to in the sheriff's certificate, was the service on him as such defendant, and not as the clerk or agent of Eva Mack. The court did not err, therefore, in refusing to enter a default against Eva Mack.

The judgment is reversed with costs, and the cause remanded with instructions to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.

Filed March 6, 1884. Petition for a rehearing overruled April 25, 1884.