## RUMSEY and others v. TOWN and others.

*(Circuit Court, S. D. Iowa, C. D.   May Term, 1884.)*

1. INSOLVENCY LAW OF IOWA—RIGHTS AND LIABILITIES OF ASSIGNEE.
    The assignee succeeds to all the rights of his assignor and is affected by all the equities against him; but equities or rights belonging to a creditor are not by operation of law transferred to the assignee.

2. SAME—JURISDICTION OF THE COURTS.
    The state court in which the assignee files his bond is charged with the duty of carrying out the provisions of the Iowa insolvent law; but other courts may entertain jurisdiction of cases settling the rights of parties who are interested in the estate.

3. SAME—ORDER APPROVING PAYMENT OF MORTGAGE DEBT.
    The court that controls the proceedings in assignment does not, by an order approving the payment of a mortgage debt by assignee, adjudicate the question of the validity of the mortgage.

4. SAME—NEGLECT TO RECORD MORTGAGE—SUBSEQUENT CREDITORS WITHOUT NOTICE.
    The neglect of a mortgagee to file his chattel mortgage deprives him of his right, as against a subsequent creditor, without notice, of the mortgagor; and after assignment by the debtor he is on a like footing with all creditors, without notice, of a date prior to the recording of the mortgage.

In Equity.

*Wright, Cummins & Wright,* for complainants.

*C. C. Cole* and *Goode, Wishard & Phillips,* for defendants.

SHIRAS, J.   On the thirty-first day of July, 1880, Robinson & Atherton, a firm doing business at Des Moines, Iowa, executed a chattel mortgage on their stock of merchandise to the defendant Cole to secure him against liability as an indorser upon their note for $1,500. The note was executed for the purpose of raising money to meet their indebtedness, and was secured by the indorsement of C. C. Cole, with the chattel mortgage to him upon their stock in trade.   The note, with the mortgage as collateral thereto, was negotiated with J. J. Town, O. Noble, and T. H. Delamater, doing business in Des Moines under the name of "The Valley Bank."   The bank held the mortgage without recording it until October 6, 1880, when it was filed for record. During the interval between the date of the mortgage and the recording of the same the mortgagors remained in full possession of the property therein described, selling therefrom in the usual course of their trade and applying the proceeds to their own use.

Previous to the execution of the mortgage in question the complainants, L. M. Rumsey & Co., a firm doing business in St. Louis, Missouri, had sold goods on credit to Robinson & Atherton, and had also sent to them certain goods to be sold on commission.   During the months of July and August, 1880, complainants endeavored to procure the return to them of the commission goods intrusted to Robinson & Atherton.   After some correspondence between the parties, the latter firm proposed to buy these goods, and on the nine-

teenth of August, 1880, a contract of sale was made, and Robinson & Atherton bought the goods on a credit of 40 days, giving an acceptance therefor in the sum of $683.12. When this sale was made, complainants had no knowledge of the existence of the chattel mortgage held by the Valley Bank, which, by its terms, covered all goods added to the stock after its date, and therefore included the goods thus bought of complainant.

On the thirteenth day of October, 1880, Robinson & Atherton made a general assignment for the benefit of creditors to one William Foster, who accepted the trust, and filed his bond and inventory, as required by the statute of Iowa, in the circuit court of Polk county, Iowa. The assignee took possession of the stock in trade of his assignors, and thereupon the Valley Bank filed a petition in the state court for the foreclosure of the mortgage held by them, making Robinson & Atherton, and Foster, the assignee, defendants thereto. No hearing was had, nor was any decree entered in this cause, it appearing that assurances were given to the complainant that the mortgage would be paid by the assignee without contest. The assignee sold the goods, and, from the proceeds, paid to the Valley Bank the amount due upon the note of Robinson & Atherton, and thereupon the foreclosure suit was dismissed. In the mean time the complainants herein brought an action at law in the state court, aided by an attachment, against Robinson & Atherton upon their acceptance for $683.12, and served a notice of garnishment upon the assignee, William Foster. In this cause complainants recovered judgment against Robinson & Atherton for the amount due on the acceptance, and they took the answer of the garnishee, in which he set forth that he held the goods transferred to him under the deed of assignment executed by Robinson & Atherton; that he had sold the property, realizing about $4,000 therefrom, and had paid the amount due on the mortgage to the Valley Bank, and other claims, leaving in his hands about $1,200. Upon this answer, the plaintiffs in attachment moved for judgment against the garnishee, on the ground that there was then left in the hands of the garnishee more money than was needed to pay the debt due plaintiffs, and that the assignment to Foster, the garnishee, was void upon its face for several reasons set forth in the motion. The state court overruled this motion, holding the assignment to be valid. The complainants did not file their claim under the assignment, nor did they receive any dividend therein. The assignee, from the funds in his hands, paid the expenses of the assignment, and divided the balance left among the creditors of Robinson & Atherton, who had filed their claims with him, and filed a final report in the circuit court of Polk county, in which he set forth the payment by him of the amount due to the Valley Bank in satisfaction of their mortgage. This report was approved by the state court, and the assignee was discharged from further duty under the assignment.

On the third day of August, 1881, complainants filed a bill in the

present cause, making Town, Noble, and Delamater, partners doing business under name of the Valley Bank, C. C. Cole, and Robinson & Atherton, defendants, and praying that the mortgage held by the Valley Bank be declared void as against complainants, and that the fund received thereunder be subjected to the payment of the debt due complainants from Robinson & Atherton, evidenced by the judgment obtained in the state court, upon which it was averred an execution had been issued and returned wholly unsatisfied.    To this bill the defendants interposed a demurrer, which was overruled, and thereupon the defendants, with leave of the court, filed answers to the bill, and issue being joined thereon, the cause was submitted upon the pleadings and evidence.

In the first place, it is contended on the part of the defendants that this court should not entertain jurisdiction of this proceeding, in which is involved the validity of the chattel mortgage executed by Robinson & Atherton, because that question properly belonged to the state court, in which the assignment proceedings were had.    And further, that the proceedings in the circuit court of Polk county amount to an adjudication of the question as between the Valley Bank and complainants.

The first question to be determined is as to the effect of an assignment for the benefit of creditors under the Iowa statutes, and the power and rights thereby conferred upon the assignee.    Does the assignee represent the rights and equities of the several creditors so that these, no matter how they originate, must be enforced through the assignee, or does he represent the title and estate of the assignor, with the right as a trustee thereof to do that which is necessary for the fulfillment of the trust in the interest of the beneficiaries?    The ordinary rule laid down by the authorities is that the assignee succeeds to the rights of the assignor, and is affected by all the equities against him.    Burrill, Assignm. § 391; *Stewart* v. *Platt*, 101 U. S. 731.    In New York, Connecticut, and other states the power of the assignee is enlarged by statutory enactment so as to include the right to treat as void all transfers and acts done by the assignor in fraud of creditors.    The Iowa statute regulating assignments for the benefit of creditors, being chapter 7, tit. 14, Code, clearly recognizes the fact that an assignment is a purely personal right of the debtor in the first instance.    There is no mode by which a debtor can be compelled to make an assignment; it is wholly for the debtor to determine whether he will or will not make an assignment, and also to whom the assignment shall be made.    The statute, however, regulates the assignment when made, and provides for the mode of carrying out the trust created by the deed of assignment.    Section 2127 of the Code defines the powers of the assignee as follows:

"Any assignee, as aforesaid, *shall have as full power and authority to dispose of all estate, real and personal, assigned, as the debtor had at the time of the assignment,* and to sue for and recover in the name of the assignee

everything belonging or appertaining to said estate, *and, generally, do whatsoever the debtor might have done in the premises.*"

This section is wholly silent touching the rights and equities of creditors, and would seem to measure the rights of the assignee by those of the debtor. All property belonging to the estate passes to the assignee, and he can recover the same by proper suit in his own name. If any property actually belonging to the debtor is in possession of third parties, or if the legal title thereto is in a third party, the assignee may recover the same by proper action. Thus, if the debtor has, in fraud of creditors, conveyed property to a third party, thus concealing it from creditors, but actually being the owner thereof, the assignee can maintain suit therefor, under the section of the Code in question, because in truth the property thus transferred belongs to the debtor, and passes by the deed of assignment to the assignee. In such a case, equity would not aid the debtor in recovering the property, not because he is not really the owner thereof, but because he had been guilty of a fraud, and therefore within the rule that "he that hath committed iniquity shall not have equity." The assignee, however, would not be affected by this disability, not being personally a party to the fraud, and he could, therefore, be heard to assert that the property in question really belonged to the estate of which he was trustee.

When, however, a given question turns upon equities or rights belonging to one or more of the creditors, can it be maintained that by operation of law these equities have been transferred from the creditors to the assignee? Certainly at common law no such effect can be attributed to the deed of assignment executed by the debtor. The statute of Iowa regulating assignments does not in express terms so declare; and in the absence of positive enactment enabling the assignee to enforce the equity of the creditor, it is difficult to see upon what the claim is based. For illustration, take the case of a mortgage executed upon a stock of merchandise by A. to B., to secure a debt due the latter. A. executes and delivers the mortgage without any agreement that the same shall be withheld from record, and, in fact, he may suppose that B. has recorded it. A. remains in possession, and continues to buy and sell in the ordinary way of his business. Instead of promptly recording the mortgage, B. intentionally withholds the same from the record, concealing its existence with the intent that A. may be thus enabled to buy goods on credit and add them to the stock covered by the mortgage, which, by its terms, includes all goods added to the stock after the execution of the mortgage. C., in ignorance of the existence of this mortgage, sells goods on credit to A., which are added to the stock, and then B. records his mortgage. Thereupon A. makes an assignment under the state statute for the benefit of creditors. As between A. and B. the mortgage is valid, being given by A., in good faith, to secure a debt actually due B. The only person whose rights are affected thereby is C.

If he chooses so to do, he can contest the validity of the mortgage on the ground that B. misled him to his injury by concealing the existence of the mortgage, and withholding the same from the record. This, however, is an equity wholly personal to C., which he may enforce or not as he pleases. Upon what ground can it be successfully claimed that the deed of assignment, executed by A., conveys this equity, existing in favor of C., to the assignee? It will be noticed that the equity in favor of C. does not grow out of the title or right existing in A., and which passes by the deed of assignment. C.'s equity grows out of the wrong acts of B., and in effect is the right to estop B. from asserting that the title of his mortgage exists as against C. This equity on behalf of C. is not affected by the act of A. in making the assignment, nor does the assignee, under the Iowa statute, become vested with the right to enforce it.

Consequently the claim made in this case, that the making of the assignment to William Foster conferred upon him the right to enforce the equities of complainants, as against the mortgagees Town *et al.*, cannot be sustained. For the same reasons the fact that the deed of assignment having been executed, the assignee gave bond and filed the proper schedules and inventory in the circuit court of Polk county, did not, *ipso facto*, confer upon that court the exclusive jurisdiction to hear and determine all questions existing between the creditors of Robinson & Atherton.

The statute of Iowa regulating assignments requires certain steps to be taken, reports made, and orders procured for the proper fulfillment of the trust conferred by the deed of assignment on the assignee. The state court, in which the assignee files his bond, is charged with the duty of carrying out these provisions of the statute, and no other court will interfere therewith or attempt to assume the performance of the duties required of the court having charge of the assignment under the state statute. But it is equally clear that other courts may entertain jurisdiction of cases settling the rights of parties who are interested in the estate. Thus the assignees may maintain actions in other courts for the recovery or protection of the property belonging to the trust. Creditors may sue the debtor in any proper court, for the purpose of establishing the existence of a debt against the assignor. Disputes touching the title to property, between the assignee and third parties, may be adjudicated by other courts, and in these and other instances that might be named, the exercise of jurisdiction by other courts does not in any just sense interfere with the jurisdiction of the court having control of the assignment proceedings.

The question of the validity of the chattel mortgage held by the Valley bank, as against complainants, could be heard and determined without interference with the jurisdiction of the circuit court of Polk county, and hence the point made that that court alone had jurisdiction of the question cannot be sustained.

The cases cited by counsel for defendants in support of the proposition that "the court first having control of the case has the right to settle every question that may arise in the case," to-wit, *Peck* v. *Jenness*, 7 How. 624; *Freeman* v. *Howe*, 24 How. 450; *Peale* v. *Phipps*, 14 How. 374; and *Buck* v. *Colbath*, 3 Wall. 341, do not sustain the application to the case at bar that counsel seek to make of the general proposition above given.

In *Buck* v. *Colbath*, the proper application of the rule is explained, it being stated that—

"It is not true that a court, having obtained jurisdiction of a subject-matter of a suit, and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and, in some instances, requiring the decision of the same questions exactly. In examining into the exclusive character of the jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties to the different suits."

The facts in *Buck* v. *Colbath* were that Buck, as marshal of the United States court in Minnesota, levied a writ of attachment upon certain goods as the property of the defendant in the attachment proceeding. Colbath sued Buck in trespass in the state court, claiming that the property levied on belonged to him. The supreme court held that the state court could rightfully entertain jurisdiction of the action in trespass, although the property was in the possession and under the control of the United States court.

The case of *Perry* v. *Murray*, 55 Iowa, 416, S. C. 7 N. W. Rep. 46, 680, is also pressed upon the attention of the court as a decision made upon the point under consideration. The supreme court of Iowa in that case held that an order of the district court, having control of an assignment, directing the payment of a *pro rata* dividend among the creditors, was an adjudication between the creditors which could not be collaterally attacked. The statement of facts shows that the assignment was made by George Stever and N. S. Averill; that the plaintiffs and other creditors duly filed their claims with the assignee, but no claim was made by plaintiffs to priority over other creditors; that after the expiration of three months the assignee made his report to the court, no exception being made thereto, and thereupon the court ordered the payment of a *pro rata* dividend among all the creditors, to which order no exception was taken. Some months afterwards the plaintiffs filed their petition, asking the court to marshal the assets, and for an order directing the assignee to pay the creditors of the firm of Stever & Averill in full before making payment to the other creditors. Under this state of facts it was held that the order for payment of a dividend was an adjudication upon the question of distribution of the assets held under the assignment among the creditors who had filed their claims, and that it could not be collaterally attacked, it being further ruled that the court in which the assignment was filed must of necessity be vested with

the power to determine priorities among the creditors, or otherwise the payment of dividends could not be safely ordered. To this decision, and the reasoning upon which it is based, we can see no good ground of exception. In that case the plaintiffs sought, by an independent proceeding, to compel the assignee to marshal and distribute the assets in his possession in a manner wholly different from that prescribed in the order of the court made in the assignment proceedings, thus endeavoring to subject the assignee to different and contradictory orders. The contention of the plaintiffs was that under the deed of assignment they were entitled to the marshaling of the assets in the manner claimed, and the ruling of the court was that such order should be sought in the assignment proceedings proper; and as the plaintiffs had filed their claim under the assignment without claiming a preference as firm creditors, and had allowed the court to act upon the report of the assignee, and adjudicate upon the mode of distribution, without exception thereto, such order must stand as a judgment upon the question, binding upon plaintiffs so that it could not be attacked in a collateral proceeding. The true scope of this decision is indicated in the opinion by the reference to the prior decision in the case of *Wurtz* v. *Hart*, 13 Iowa, 515. In that case it is said that "it was never intended by the statute that all the various rights and equities of creditors should be settled exclusively and only in the manner there pointed out." If the present proceeding was against the assignee, and the relief sought was the procurement of an order directing or controlling the assignee in the distribution of the assets held by him under the deed of assignment executed by Robinson & Atherton, then the ruling in *Perry* v. *Murray* would be applicable; but in this cause no relief is sought against the assignee, nor is there any right or priority asserted under the deed of assignment. The trust treated by the execution of the assignment has been fully executed. The proceedings in assignment have been carried to completion, and the assignee has been discharged. The rights of the assignee, and the control of the state court over him, are at an end.

The question now to be determined is one arising between the Valley Bank and complainants, and no good reason is perceived why complainants are barred from investigating the question by force of the proceedings had in the circuit court of Polk county. Of course, had complainants appeared in that court, and by any proper proceeding against the Valley Bank raised or presented the question of the validity of the chattel mortgage as against complainants, then the action of the state court thereon would have been an adjudication to which full faith and credit would be due, and which would preclude a re-examination of the same issue in any other court. It is urged in argument that this effect must be given to the order made by the state court approving the report of the assignee, in which report was set forth the fact that the assignee had paid the amount due on the mortgage to the Valley Bank. It is not claimed that any issue was in

fact made between the assignee and the Valley Bank touching the validity of the chattel mortgage, much less between the complainants and the bank, or that the court heard and decided the same. The argument is, in effect, that such issue might have been properly raised in that court, and therefore the order approving the action of the assignee must be held to be an adjudication of the question. The order of the court may well be a protection to the assignee, but it cannot be held to be an adjudication of rights and equities not arising out of the deed of assignment, and existing between complainants, who were not in fact parties to the assignment proceedings, and Town, Noble & Co., who held under a mortgage, and not under the assignment.

The conclusions reached upon these propositions are (1) that, under the statute of Iowa, a deed of assignment for the benefit of creditors does not confer upon the assignee the right to enforce special equities existing on behalf of one or more creditors, as against other creditors, so as to deprive the creditor of the right to assert, in his own name and right, such equity against a third party; (2) that while the filing of a bond and inventory by the assignee, in either the district or circuit court of the state, confers upon that court control over the assignee, and over the trust committed to him, with the right to make the necessary orders for the distribution of the assets under the deed of assignment, it does not confer upon that court exclusive jurisdiction over all questions arising between creditors touching their rights and equities in the premises; (3) that an order made by the court having control of the assignment proceedings, approving the payment, by an assignee, of a mortgage upon the assigned property, is not an adjudication of the validity of the mortgage, as against creditors not appearing in the assignment proceedings, and whose rights, as against the mortgage, are not conferred by the deed of assignment.

It will be remembered that the money received by Town, Noble & Co. was not paid to them by reason of the assignment to Foster, but because they held a chattel mortgage upon the property. Town, Noble & Co. did not claim a right to or lien upon the goods under the assignment, but under the chattel mortgage, which they claimed gave them the prior and paramount right to the possession of the goods, and to be first paid out of the proceeds. They instituted an independent action to enforce their rights as against the assignee as well as against Robinson & Atherton. The assignee, however, recognized and acknowledged the prior right of the mortgagees, and thereupon, with their assent, sold the goods and delivered to the mortgagees so much of the proceeds as was needed to pay their claim. The case in fact stands, therefore, just as it would if the mortgagees had taken possession of the goods under the mortgage and converted them into money. So far as it affects the rights of complainants, it makes no difference whether the goods were converted into money through a

sale by the sheriff or by the assignee. In either case the money passes into the hands of the mortgagees as the proceeds of the mortgaged property, and the right of the mortgagees to hold the same in either case is based upon the mortgage.

It is urged with much force in argument that complainants have no superior equity to the proceeds of the mortgaged property over Town, Noble & Co., because the debt due the latter is equally meritorious with that due complainants, and that if Town, Noble & Co. are now deprived of the benefits of the mortgaged property they can receive nothing upon their debt under the assignment. It does not appear, however, that laches can be imputed to the complainants. Within a week after the filing of the assignment complainants brought their action at law to recover judgment against Robinson & Atherton. As the possession of the stock of goods was then with the assignee, they were not in fault in not obtaining a special lien upon the property. They could not sustain a bill in equity against the mortgagees until they had procured a judgment at law and a lien thereunder, or the return of an execution unsatisfied. The delay in procuring judgment in the law action was not due to any fault upon their part. As soon as they were in a position to attack the validity of the mortgage they did so, by filing the present bill. In the mean time Town, Noble & Co. had, through the agency of the assignee, converted the mortgaged goods into money, and the assignment proceedings were closed up. It is doubtless true that Town, Noble & Co. have lost the right to claim any benefit from the assignment, but it is not perceived that this result is in any sense due to the acts or failure to act on part of complainants.

The complainants show to the court that there is justly due to them from Robinson & Atherton a given sum, for which they have a judgment, and that Town, Noble & Co. have in their hands certain goods, or the proceeds thereof, heretofore belonging to their debtors, and they ask the aid of the court to reach the fund, and subject it to the payment of their judgment. Town, Noble & Co. assert their right to the fund under the chattel mortgage executed by Robinson & Atherton, and its validity being impeached by complainants, the question to be determined is whether it is valid as against complainants. While, therefore, it is true that a decision adverse to Town, Noble & Co. may work a hardship upon them, this result is not attributable to the laches of complainants, and the rights of the parties are therefore left dependent upon the validity or invalidity of the chattel mortgage. Upon this question, it appears from the evidence that Town, Noble & Co., to whom the chattel mortgage was delivered in July, did not record the same until in October following; and from the date of the delivery of the mortgage until the property passed into the possession of the assignees they permitted the mortgagors to remain in possession of the stock in question, and to sell and deal with the same as their own property, without accounting for the proceeds thereof,

and without applying the same to the payment of the mortgage debt. It also appears that complainants, after the execution, but before the recording of the mortgage, and without notice of its existence, sold goods on credit to Robinson & Atherton, which, becoming part of the stock, came under the lien of the mortgage. The facts, therefore, bring the case clearly within the rules announced in *Crooks* v. *Stuart*, 2 McCrary, 13; S. C. 7 FED. REP. 800; *Argall* v. *Seymour*, 4 McCrary, 55; and *Robinson* v. *Elliott*, 22 Wall. 513, and the mortgage must be held invalid and void as against the complainants.

So far as the defendant Cole is concerned it does not appear that he ever reaped any benefit from the mortgage. On the contrary, it appears that the mortgage, although executed to him as grantee, was delivered to Town, Noble & Co. when the loan was effected, and passed from the control of the defendant Cole at that time. The failure to record the mortgage, and the other facts rendering the mortgage void, are attributable, not to Cole, but to Town, Noble & Co., and hence the defendant Cole is not personally responsible to complainants herein.

Complainants are therefore entitled to a decree declaring the chattel mortgage void as to them, and estopping defendants from asserting any prior right thereunder against the fund realized from the sale of the mortgaged property, and ordering said Town, Noble and Delamater to pay to complainants, within 60 days from date, the amount due complainants on the judgment in their favor against Robinson & Atherton, with interest and costs, and that if said sum is not paid as ordered that execution against said parties may issue for the collection of said sum.