The John Shillito Company v. McConnell et al.

## No. 15,742.

THE JOHN SHILLITO COMPANY v. McCONNELL ET AL.

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Preferring Creditor, Can Not be Done in Deed of Assignment.*—A debtor in failing circumstances may prefer certain of his creditors to the exclusion of his other creditors; but such preferences can not be made as a part of the general assignment under the statute for the benefit of all his creditors.

SAME.—*Preference.*—*Knowledge of Insolvency.*—*Preference After Beginning Preparation for Assignment.*—A debtor, with a knowledge of his insolvency, and in contemplation of a general assignment, may preface such an assignment by executing to any of his creditors a mortgage upon his property to secure their claim; but where he has entered upon the performance of any formalities necessary to make an assignment under the statute for the benefit of all his creditors, he can not thereafter make any valid preference if he perseveres in and completes the assignment thus begun.

MORTGAGE.—*Execution Includes Delivery and Acceptance.*—The execution of a mortgage includes its delivery to and acceptance by the mortgagee.

SAME.—*Recording as Evidence of Execution.*—The record of a mortgage is *prima facie* evidence of its prior execution, but it is not conclusive, and it may be shown that, although recorded on a certain date, it was not delivered until afterward.

From the Dearborn Circuit Court.

D. H. Stapp and D. D. Woodmansee, for appellant.

H. D. McMullen, W. R. Johnston, H. R. McMullen, G. E. Downey and A. Zollars, for appellees.

McBRIDE, J.—The appellee Robert A. McConnell was a merchant, and appellant is his creditor. McConnell, being in failing circumstances, to prefer certain of his creditors executed to them a mortgage on his property, and, also, made a general assignment of his property for the benefit of his creditors, under section 2662, R. S. 1881. Thomas W. Sargent, one of the appellees, is the assignee, and the remaining appellees are the preferred creditors.

Appellant brought this suit to set aside the mortgage as fraudulent and void, making the debtor, the assignee, and the

preferred creditors defendants. The only question in the record is, whether or not the mortgage is void. This question was raised by a demurrer, which the court sustained to the first, third and fourth paragraphs of the complaint. The ground upon which appellant insists that the mortgage is void is, that it was executed contemporaneously with and as a part of the deed of assignment. If the facts pleaded show this to be true, the mortgage is invalid as to the unpreferred creditors, and the court erred in sustaining the demurrer. The law is too well settled to require the citation of authorities that a debtor in failing circumstances may prefer certain of his creditors to the exclusion of others.

Such a preference, however, can not be made as a part of a general assignment under the statute for the benefit of all his creditors. *Grubbs* v. *Morris*, 103 Ind. 166; *Henderson* v. *Pierce*, 108 Ind. 462.

While an insolvent debtor can not, as a part of a general assignment prefer creditors, he may, with knowledge of his insolvency, and in contemplation of a general assignment, preface such assignment by a preference of certain of his creditors. Nor is it material how long or how short the time which intervenes between the execution of the preference and the making of the assignment. It is enough if there is a *bona fide* preference of *bona fide* creditors, which, in fact, precedes the making of the general assignment. So long as a man retains dominion over his property he may make such honest preference, and as an assignment of that character has no retroactive effect except upon property fraudulently conveyed, or preferences fraudulently made, he may make such preference at any time before the assignment is made. *Gilbert* v. *McCorkle*, 110 Ind. 215; *Carnahan* v. *Schwab*, 127 Ind. 507.

The *bona fides* of such transaction is, of course, always open to inquiry. It is always competent to inquire if the debt purporting to be secured is a *bona fide* debt; whether or not the transaction, while ostensibly to secure a debt of the insol-

vent, is not, in fact, a collusive attempt by the debtor and a pretended creditor to withhold the debtor's property from the operation of the assignment for the debtor's benefit, etc. We think that in the investigation of all such questions the length of time elapsing between the execution of the preference and the making of the assignment may properly be considered in connection with the other circumstances of the transaction.

The question comes to us on the pleadings only, and is to be determined from the facts averred by the pleader. So far as material to the controversy in this court, the averments of the first paragraph are substantially as follows:

That on the 12th day of October, 1889, defendant McConnell was in embarrassed and failing circumstances, and he " then commenced making an assignment of his property ; and the plaintiff says that on said date the said Robert A. McConnell, in violation of the law relative to assignments, conveyed, by way of mortgage, to certain of his creditors all his personal property and real estate." The names of the favored creditors, with the amounts of their respective claims, are then set out. It is then averred that all of said claims thus secured are for pre-existing debts, but that said secured creditors are not all of the *bona fide* creditors of said McConnell, but that plaintiff, and others not secured by said mortgage, are also his *bona fide* creditors, and that the secured claims will more than exhaust all said debtor's property. It is then averred that " *immediately after, and contemporaneous* with the making of the mortgage conveyance above referred to, which is made a part of this paragraph of complaint, and marked ' Exhibit B,' the said Robert A. McConnell also executed a deed purporting to convey to the defendant Thomas W. Sargent, in trust, for the benefit of all his *bona fide* creditors, all his property, both personal and real. And the plaintiff says that, while said trust deed bears date October 14th, 1889, in truth and in fact it was made and executed contemporaneously with the mortgage conveyance above

referred to, a copy of which deed is filed herewith and made a part of this paragraph and marked ' Exhibit C.' " The paragraph concludes with a prayer that the mortgage and the deed of assignment be adjudged as parts of one transaction, and as together constituting the indenture of assignment, and for judgment accordingly.

The statements in this pleading are so contradictory that it is difficult, if not impossible, to determine what the pleader means.

It is said that on a certain date the debtor "commenced making an assignment." The alleged commencement of the assignment consisted, it is said, in making, in " violation of the law relative to assignments," a mortgage preferring certain of his creditors. We confess our inability to understand how an act, which was done in violation of the law relative to assignments, was at the same time an act done pursuant to that law, and the commencement of an assignment in accordance with its terms.

It is then said that *"immediately after and contemporaneous with"* the making of the mortgage the deed of assignment was made.

We are also unable to comprehend how one act may be at the same time *"after"* and *"contemporaneous"* with another act.

We assume that the learned counsel who drew the complaint used these terms inadvertently. In the haste of active practice such unintentional lapses of the pen may be made by the best attorneys.

Copies of the mortgage and deed are made parts of this pleading. Whether correctly so or not we need not decide ; but the notary's certificate of acknowledgment to the mortgage shows its acknowledgment to have been October 12th, 1889. The deed was acknowledged October 14th, 1889. This paragraph fails to show, either by express averment or by " fair intendment," that the mortgage and deed of assignment were contemporaneous in their execution, or that they were

so connected in any other way as to make them parts of one transaction, and the demurrer thereto was correctly sustained.

The third paragraph of the complaint, after alleging the making of the assignment on the 14th day of October, 1889, contains the following with reference to the making of the mortgage :

" That at the time of executing the said assignment, and cotemporaneously therewith, the said Robert A. McConnell mortgaged all his property, including all his merchandise in his store and his real estate, not even exempting from said mortgage the amount of property that would be allowed him as exempt by law, to secure," etc., giving names of secured creditors, with the amounts of their claims.

The paragraph then proceeds : " That said mortgagor caused said mortgage securing the aforesaid debts to be dated October 12th, 1889, and to be placed on record in recorder's office on the same date, which was Saturday, and caused the deed of assignment to be dated October 14th, 1889, the Monday following. That said two instruments were made cotemporaneously with each other, and that said mortgage covered all the debtor's property, and was to secure sums largely in excess of the fair cash value of all the property then owned by the debtor."

It is also averred that the debts thus secured were pre-existing debts, and that " said mortgage was recorded, on the 12th day of October, 1889, immediately after its execution, in the recorder's office of Dearborn county," etc.

In this paragraph it is expressly averred that the making of the mortgage and the deed of assignment were contemporaneous acts.

This averment is not weakened or qualified by the statement that the mortgagor caused the mortgage to be dated October 12th, and recorded on that day, while the deed of assignment was not made until October 14th. The para-

graph charges the simultaneous *execution* of the two instruments.

The fact that a mortgage is placed on record on a certain date affords *prima facie* proof of its execution on or before that day. *Mallett* v. *Page*, 8 Ind. 364; *Somers* v. *Pumphrey*, 24 Ind. 231.

The execution of a mortgage includes its delivery to and acceptance by the mortgagee.

Delivery is as essential a part of the execution of a mortgage as signing it, and, while the record of a mortgage is *prima facie* evidence of its prior execution, it is not conclusive, and it may be shown that, although recorded at a certain date, it was not delivered until afterward.

In this pleading it is averred that causing it to be recorded on that date was the act of the mortgagor, and that the two instruments were in fact made contemporaneously with each other. This necessarily means that they were executed at the same time, which might be true if the mortgage, although recorded on the 12th day of October, was not delivered until the 14th of October.

The only averment in this paragraph apparently in conflict with the express statement that the two instruments were executed at the same time, is the statement above referred to, that the " mortgage was recorded on the 12th day of October, 1889, immediately after its *execution*," etc. If the word " execution," as here used, is to be given its technical signification, and if this is to be treated as an averment that the mortgage was fully executed before it was recorded, the averments in this paragraph, like those in the first, are contradictory of each other.

A mortgage which was recorded on the 12th day of October, and was executed before it was recorded, was not executed contemporaneously with an instrument which was executed on the 14th day of October. We can not say, however, that this expression, in the connection and manner in which

it is used, can control the express and repeated averments that the two instruments were executed at the same time.

This paragraph, therefore, presents the question as to whether or not a debtor in failing circumstances, engaged in making a general assignment of his property for the benefit of all his creditors, can at the same time make valid preferences of certain of his creditors by mortgage or otherwise. That he can not make such preference by or in the deed of assignment itself, is, as we have shown, settled and correctly settled in this State. We think it equally clear that he can not in any other manner make a valid preference of a creditor, while he is engaged in the act of making such assignment, provided the assignment is consummated.

While it can not be said that the debtor has in fact surrendered dominion over his property until the assignment is complete, as from the purely voluntary nature of the transaction he may at any time before the final act change his mind and refuse to complete it; yet, being completed, we think it ought to be held to relate back to the time when it was actually commenced, and cover all intervening transactions. The act of making the assignment embraces the preparation and execution of the necessary instruments, and whether that takes a long or a short time, it certainly must all be treated as one continuous act. To say that the debtor's surrender of his absolute control over the disposition of his property is to be dated from the time he actually commences to make the assignment, is to give to the entire transaction the character of good faith, and make it, in fact, what it purports to be—an effort to secure to all his creditors that equal consideration contemplated by the statute. But to hold that while he is thus engaged he may at the same time successfully prefer favored creditors, is to hold that he may at one and the same time do two exactly contradictory acts. It is to hold that he may be engaged in making a voluntary assignment for the benefit of *all* his creditors, insuring the equal distribution of all his property among all

of them, without preference, and also in securing to some
of these creditors payment in full of their claims to the ex-
clusion of others—something as difficult of accomplishment
as the equestrian feat of riding two horses in opposite direc-
tions at the same time. This paragraph of the complaint
charging, as it does, that the mortgage was made contempora-
neously with the deed of assignment, we think the circuit
court erred in sustaining the demurrer to it.

The fourth paragraph of complaint charges in substance
that McConnell, being hopelessly insolvent, and having full
knowledge of that fact, determined to make a general assign-
ment of all his property for the benefit of his creditors, but
desired at the same time to prefer certain of them ; that he
was advised by counsel that such preference could not be
legally made in the deed of assignment, but that by making
a mortgage to such creditors as he desired to prefer and
placing it upon record prior to making the assignment, he
could accomplish that purpose ; that thereupon, on the 12th
day of October, 1889, he executed the mortgage in contro-
versy, which was recorded on the 14th day of October, 1889,
and that on the 15th day of October, 1889, he carried into
effect his design, and made an assignment, with all the for-
malities required by the statute.

It is averred that the mortgage was made for the purpose
of evading the rule of law which will not allow preferences
to be made in the deed of assignment, and after he had de-
termined to dispose of all his assets by assignment for the
benefit of all his creditors, and that the making of the mort-
gage was " part of a scheme to avoid the statute, and said
mortgage aforesaid was made with that object in view, and
that the same was part of a scheme to make an assignment,
and for the sole purpose of defeating by the mortgage the
provision of the law forbidding preferences in deeds of as-
signment."

Appellant insists that upon these facts the mortgage be-
comes a part of the deed of assignment, and that the

The John Shillito Company v. McConnell et al.

court should go back to the time when the debtor determined to make an assignment and set aside all preferences thereafter made.

Our attention has been called to the case of *Preston* v. *Spaulding*, 120 Ill. 208, as sustaining this paragraph, and we are inclined to think it does sustain it. It is there held that after a debtor has made up his mind to make an assignment of his property for the benefit of creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby any preference is given, will in a court of equity be declared void, and set aside the same as though incorporated in the deed itself. The court says: " We hold that it is within the spirit and intent of the statute, that when the debtor has formed a determination to voluntarily dispose of his whole estate, and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken,—the law will regard all his acts, having for their object and effect the disposition of his estate, as parts of a single transaction ; and on the execution of the formal assignment, it will, under the statute, draw to it, and the law will regard as embraced within its provisions all prior acts of the debtor having for their object and purpose the voluntary transfer or disposition of his estate to or for creditors ; and if any preferences are shown to have been made or given by the debtor to one creditor over another in such disposition of his estate, full effect will be given the assignment, and such preferences will, in a court of equity, be declared void, and set aside, as in fraud of the statute."

We are not certain that we understand just what the court means by the expression " has entered upon that determination," but as we understand the opinion it is in direct conflict with the conclusion long since reached by this court and many times announced. While we have great respect for the opinions of the Supreme Court of Illinois, we regard

The John Shillito Company *v.* McConnell *et al.*

the rule as stated in the opinion written by the late Judge Mitchell in *Gilbert* v. *McCorkle, supra,* and as stated in other opinions of similar tenor, as being correct on principle, and we are content to abide by it.

So long as the purposed assignment remains mere matter of intention, contemplation, or determination, the debtor has done nothing to abdicate the dominion which the law gives him over his property. He may be hopelessly insolvent for months, or indeed, as is averred in this complaint, he may be insolvent for more than a year before he makes the assignment. During all of that time he may know of such insolvency, and may contemplate making an assignment. Indeed he may fully reach the determination to make it, but defer the execution of that purpose from time to time, and when such purpose is finally consummated will it do to say that a court of equity will attempt to reach back and undo all preferences given since that determination took form in his mind? Many practical difficulties would beset the chancellor in attempting to apply such a rule. Reaching the determination to make the assignment is a mental process in the debtor's mind. How may the time be fixed when he thus determines? How far back would the chancellor go in his inquisition into the debtor's state of mind?

Certain formalities are necessary to consummate such a purpose, and we think it may fairly be said that when the debtor has once entered upon the doing of these formal acts necessary to make the assignment he can not thereafter make any valid preference if he perseveres and completes the assignment thus begun. This is as far, however, as the courts can safely go.

The circuit court did not err in sustaining the demurrer to this paragraph of the complaint. For the error committed in sustaining the demurrer to the third paragraph of the complaint the cause is reversed, with costs.

Filed Feb. 26, 1891; petition for a rehearing overruled Dec. 8, 1891.