[No. 5352.    Decided April 3, 1905.]

FIDELITY NATIONAL BANK OF SPOKANE, *Respondent,* v. MELVILLE ADAMS et al., *Appellants.*[1]

LIMITATION OF ACTIONS—JUDGMENTS—FRAUDULENT CONVEYANCES—DISCOVERY OF FRAUD—ABSENCE OF JUDGMENT DEBTOR FROM STATE. The statute of limitations does not run against an action to set aside a conveyance as fraudulent and subject the lands to a judgment, until after the discovery of the fraud, nor while the judgment debtors are absent from the state.

FRAUDULENT CONVEYANCES—ASSIGNMENT FOR BENEFIT OF CREDITORS—ACTION IN NAME OF CREDITORS—ASSIGNEE FAILING TO ACT

[1]Reported in 80 Pac. 284.

OR DISCHARGED. A creditor may bring an action in its own name to set aside a fraudulent conveyance made by the debtor prior to making an assignment for the benefit of creditors, especially if the assignee was a party to the fraud or neglects to act, or has been discharged; and the debtor cannot raise the objection that only the assignee could bring such an action.

SAME—DISCHARGE IN BANKRUPTCY—FRAUDULENT CONVEYANCE PRIOR TO PROCEEDINGS. A discharge in bankruptcy is no defense to an action by creditors to set aside a fraudulent conveyance, made before the proceedings in bankruptcy, where the property was not subjected to the benefit of the creditors.

TRIAL—PLEADINGS—FAILURE TO ANSWER INTERROGATORIES—EXTENDING TIME—DISCRETION. A judgment against the defendants, upon striking out an answer for failure of the defendants to answer interrogatories, and refusing to extend the time therefor, will not be reversed where there was no abuse of discretion in refusing to extend the time.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered May 16, 1904, in favor of plaintiff, upon striking an answer for failure of the defendants to answer interrogatories, in an action to set aside a fraudulent conveyance. Affirmed.

*James Hopkins,* for appellants.

*Happy & Hindman,* for respondent.

DUNBAR, J.—The material allegations of the complaint are to the effect, that the plaintiff obtained judgment against the defendants Melville Adams and Prentice Adams, in the superior court of Spokane county, for the sum of $2,834.75 costs, and attorney's fees, etc., on the 24th day of September, 1892, etc.; that in the year 1897 said defendants departed from the state of Washington, and never since said time have been within the borders of said state; that on the 27th day of October, 1890, said defendants, in order to cheat, hinder, defraud, and delay their creditors, fraudulently caused a deed to be placed upon the records of Spokane county, attempting to deed

the property over which this controversy is waged to their brother, Quincy Adams, which deed was properly recorded in Spokane county; that the deed was never delivered, was made wholly without consideration, and was not intended to pass title to said Quincy Adams, but was put in the name of said Quincy Adams for the sole and only purpose of putting said property out of the reach of the creditors of said defendants; that thereafter, and in carrying out said conspiracy, the said Quincy Adams, at the direction, procurement, and connivance of said defendants herein, caused a deed to be placed upon the records of Spokane county in the name of the defendant herein, Charles T. Adams, which deed was properly recorded; that all the transactions by deeds between the brothers were fraudulent; that the property is now held by the said Charles T. Adams in trust, for the use and benefit of said Melville Adams and Prentice Adams, who are now the owners of the same, and that said pretended deed of conveyance is a cloud upon the title to said property; and, in order that plaintiff herein may collect said judgment and get a clear title to said property, it is necessary that a court of equity remove the cloud therefrom, and set aside said pretended deed of conveyance; that the defendants are insolvent, and have no other property with which to satisfy plaintiff's demand; and judgment is demanded that said conveyance be declared null and void, and that said property be sold to satisfy such claim of the plaintiff and such other creditors as may come in and help to pay the expenses of this action and prosecute the same. A demurrer was interposed to this complaint, which was overruled, and which constitutes the first claim of error.

The contention is that, inasmuch as the complaint shows that the judgment was obtained on the 24th of September, 1892, and that this action was not brought until more than

six years had expired, the statute of limitations had run
against the plaintiff. It must be borne in mind that this
was an action alleging fraud, and that the statute of limi-
tations would not commence to run, under our statutory
provisions, until fraud had been discovered by the ag-
grieved party; and, again, the allegation, to the effect
that the defendants had moved from the state during the
year 1897, and had not been in the state since, was suffi-
cient to protect the complaint from an assault by de-
murrer.

Upon the overruling of the demurrer, the defendant an-
swered, pleading a general denial, and setting up as an
affirmative defense that, long prior to the commencement
of this action, the defendants had made an assignment for
the benefit of their creditors, and had been discharged by
judgment and decree of the superior court of Spokane
county, setting forth in said answer a copy of said decree.
To this answer the plaintiff demurred, which demurrer
was by the court sustained as to the affirmative matter,
and overruled as to the general denial. Thereupon plain-
tiff filed certain interrogatories to be answered by the
defendants, and on May 2, 1904, filed its motion to strike
defendants' answer for the reason that defendants had
failed to answer these interrogatories. On May 6, 1904,
defendants filed a motion for extension of time in which to
answer interrogatories, which motion was denied by the
court, and on May 7, 1904, the motion to strike defend-
ants' answer was by the court sustained. Thereupon the
court made its findings of facts and conclusions of law,
and upon May 16, 1904, signed a decree awarding plain-
tiff judgment for $3,322.57.

We think the demurrer to the answer was properly sus-
tained, for the reason that the creditors of an assignor may
commence an action in their own name to set aside a

fraudulent conveyance, made by the assignor prior to his assignment, especially when it is shown that the assignee has been discharged and that there is no agent of the creditors to act for them. Creditors certainly cannot be held to be without remedy simply because a trust has been closed, and a trust will not fail for want of a trustee when a proper application is made to a court of equity for relief. Especially is this so in the absence of statutory provisions to the effect that the assignee only can bring such an action. And even in jurisdictions where the statute specially vests the right to avoid such conveyance in the assignee, creditors may sue to set aside fraudulent conveyances, if the assignee is either a party to the fraud, or neglects or refuses to institute suit when requested so to do, or when the assignee has been discharged. So far as the discharge in bankruptcy is concerned, it is no answer to a claim of fraudulent conveyance before the bankruptcy proceedings that the defendant has been discharged. If he was discharged in fraud of the law, and without the property being subjected to the benefit of the creditors which ought to have been so subjected, his discharge, so far as that particular property is concerned, is entirely without effect, and the meritorious question in the case is whether the creditors have been fraudulently deprived of the benefit of the property which is sought by this action to be reached and appropriated. Again, on the question of the right of the assignee, and the assignee only, to bring this action, it is not for the fraudulent debtor to guard the interests acquired by the assignee for the benefit of the creditors of the estate. The objection to the procedure must come from a creditor of the estate, and not from the fraudulent owner who is seeking to deprive the estate of the benefit of the property. In support of the right of the creditor to bring this action, we cite: *Hamlen's*

*Adm'r v. Bennett*, 52 N. J. Eq. 70, 27 Atl. 651; *Pills-bury v. Kingon*, 33 N. J. Eq. 287, 36 Am. Rep. 556; *Rumsey v. Town*, 20 Fed. 558; *Shillito Co. v. McConnell*, 130 Ind. 41, 26 N. E. 832; *Wright v. Mack*, 95 Ind. 332; *Phelps v. Curts*, 80 Ill. 109. In fact, such right is sustained by the great weight of authority generally, many of the cases decided being under statutes exactly like ours.

An investigation of the record convinces us that the court did not abuse its discretion in relation to not extending the time for answering the interrogatories. There being no error discernible, the judgment is affirmed.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.