M. A. CREGLOW, Appellant, v. CREGLOW BROTHERS, *et al.*

**General Assignment:** PREFERENCES: *Validity.* Evidence that a father sold to his sons their partnership stock in trade, taking their notes for the price; that they had no other property subject to execution, and the father knew it; that, after conducting business at a loss, the sons, knowing themselves bankrupt, through false statements to a commercial agency, obtained goods on credit, for the purpose of stocking up and then failing; that the sons then executed a chattel mortgage on their entire stock to their father for their entire debt to him, and, about an hour afterward, on the advice of the father's attorney, made an assignment for the benefit of creditors to their brother-in-law, warrants a finding that the mortgage and assignment constitute one transaction, in effect, a general assignment for the benefit of creditors, with a preference, which, under Code, section 2115, is void.

MORTGAGE CREATING PREFERENCE. Under Code, section 2115, declaring a general assignment by an insolvent for the benefit of creditors invalid, if not made for creditors equally, a mortgage constituting a part of and rendering a general assignment invalid because it creates a preference, is itself void as against creditors of the insolvent.

*Appeal from Franklin District Court.*—HON. D. R. HINDMAN, Judge.

FRIDAY, DECEMBER 11, 1896.

SUIT in equity to foreclose a chattel mortgage upon a stock of goods and merchandise. There was a hearing on the merits, and a decree for the defendants. Plaintiff appeals.—*Affirmed.*

*J. M. Hemingway, D. D. Murphy, D. J. Murphy,*
and *J. H. Trewin* for appellant.

*Taylor & Evans, E. P. Andrews,* and *Blythe, Markley & Smith* for appellees.

ROTHROCK, C. J.—On the seventeenth day of
November, 1894, the defendants, Creglow Bros., were
engaged in keeping a general store at Hampton, in
Franklin county.  On that day .they executed and
delivered to the plaintiff a chattel mortgage upon all
of their stock in trade to secure the payment of a
promissory note of that date for fourteen thousand
three hundred and thirty-two dollars.  The note was
made payable in one month after its date.  On the
same day, and within a short time after the execution
of the mortgage, said defendants executed an assign-
ment of their property for the benefit of their credit-
ors.  Both instruments describe the same property.
The said firm of Creglow Bros. had then no property
excepting their said stock of goods.  Within a short
time after the execution of said mortgage and assign-
ment, the other defendants in this case, being credit-
ors of said partnership, commenced actions on their
claims, and attached the property, thus disregarding
the mortgage and assignment.  Thereupon this action
was commenced against the creditors, and the question
involved in the case requires a determination of the
validity of the mortgage. The plaintiff claims that it was
taken to secure a just debt, and the defendants insist it
is void upon several grounds.  If the mortgage is held
to be void on any issue raised by the answer, there is
then no question that the liens of the attaching
creditors are valid.  The partnership of Creglow
Bros. consisted of Charles Creglow and George
Creglow.  At the time the mortgage and assignment

were made, George was twenty-four and Charles twenty-seven years old. The plaintiff is their father. The two sons had been in the mercantile business for several years. Their first venture in that line of business was at Guttenburg, in Clayton county, in the year 1891. There is evidence which tends strongly to show that their father was then a partner in the business. That business was closed out by a sale of the stock in trade in April, 1892. The plaintiff was a partner with one Millan in a store at Glen Haven, Wis., and the partnership was dissolved by a division of the stock in trade, and the two sons of the plaintiff took their father's share of the property and started a store at Northwood, in this state, where they continued in business until March, 1893, when they moved their store to Waseca, Minn., and they remained there until July, 1894. In the month of August in the same year, they removed to Hampton, where they continued in the same business until they closed out by executing the mortgage and the assignment in controversy in this case.

II. The defendants claim that the mortgage was void, as against them as creditors, on the following grounds: (1) That the instrument is without consideration, and was made to hinder, delay, and defraud creditors; (2) that the plaintiff was a secret member of the firm of Creglow Bros.; (3) that the plaintiff and Creglow Bros. and one Beddow, whom they made assignee, entered into a conspiracy to secure a large quantity of goods on the credit of Creglow Bros., and that, when so secured, they should be transferred to the plaintiff to pay his claim; (4) that the mortgage was a part of a general assignment made by Creglow Bros., and is void, in law, because it prefers the plaintiff. It is not our purpose to set out the evidence. To do so would unduly extend this opinion. We do not believe that the facts as disclosed in the testimony,

would sustain a finding of the alleged secret partnership, and it would be error to hold that the mortgage was without consideration; and, while there is evidence tending to show that there was an understanding between the father and sons that the store was to be stocked up so as to be sufficient in value to secure the debt due to the plaintiff, yet we do not think the decision of the case should be put upon that ground. But we believe that the decree should be affirmed upon the ground that the mortgage is void because it was part of the transaction which culminated in the assignment, and in so holding, we think all of the evidence which it is claimed support the other defenses should be considered.

III.    Section 2115 of the Code is as follows: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims." This provision of the statute has many times been under consideration by this court, in connection with cases involving the validity of a mortgage, or mortgages, and a general assignment of the property of the mortgagor. It has uniformly been held that, if the mortgage is executed without any reference to a general assignment, and afterwards, and as an independent transaction, in no manner connected with the mortgage, and upon an intention formed after the making of the mortgage, a general assignment is made, the mortgage, if taken without fraud and in good faith, for the payment of an honest debt, is valid. See *Bradley v. Bailey*, 95 Iowa, 745 (64 N. W. Rep. 758), and cases there cited. The same case, and many others, hold that if the two acts,—the making of the mortgage, and the general assignment,—are one transaction, and both made in pursuance of an intention to make a general

assignment, they amount to a general assignment with preference, and the mortgage is void under the statute. See *Elwell v. Kimball,* * (69 N. W. Rep. 286). The question to be determined, under the facts and circumstances disclosed in evidence, is whether the plaintiff's mortgage is a valid instrument. We will not recite the testimony of the witnesses. It will be sufficient to state, in a general way, the facts which we regard as established by the evidence. When the plaintiff sold his sons the stock of goods which was removed to Northwood, the consideration of the sale was about four thousand dollars, which was evidenced by promissory notes. The business at Northwood and at Waseca resulted in a loss, and when the old stock was removed from the last-named place to Hampton, the sons had no other property liable to execution. All of their business enterprises were failures. The debt to the father was increased by drafts upon him, until, at the time they removed to Hampton, it amounted to nearly the sum for which the mortgage was given. It quite satisfactorily appears, from the acts of the sons, that they did not at any time contemplate to continue in business at Hampton. The plaintiff was at the place about the time of the removal. They were unable to pay the freight charges for the shipment of the goods, and the plaintiff furnished them with one hundred and fifty dollars for that purpose. When they removed to Hampton, one of them sent his family and his household furniture to South Dakota, where they remained, and he went there when the enterprise culminated. One of them made a false statement to Dun's Commercial Agency in order to obtain credit. On the faith of this statement, they purchased a large quantity of goods on credit. They bought largely in excess of what was

*NOTE.—This case was held out on re-hearing and will appear in a later Iowa report.—REPORTER.

proper and requisite for the trade in that locality. They were indebted in the sum of nearly fifteen thousand dollars to wholesale merchants when the mortgage and the assignment were made. These debts were contracted with about ninety wholesale dealers in different parts of the country, and the debts were contracted within a short time before the failure. They knew they were bankrupt, and could not make payment for the goods. In short, the debts were contracted by a gross fraud and misrepresentation, and the plain inference, from all the facts, is that they intended to accumulate a large stock in trade, and then fail. Now, as we have said, the plaintiff must have known that this was their purpose. It is true they all testified as witnesses that such was not the intention. But the testimony of the sons in reference to their acts in the matter is unworthy of credit, and the father, being a business man and a banker, must have known that his sons were pursuing a fraudulent course of dealing. He ought to be held to have known that no wholesale dealer would have extended credit to his sons if it had been known that they were indebted to their father greatly in excess of any property which they owned. This being the condition of affairs, the father procured his son-in-law, named Beddow, and an attorney, to go to Hampton and take the mortgage. In a very short time after that, the assignment was made. The acknowledgements of both instruments were taken before the same officer, and he testified that the acknowledgement of the assignment was taken from twenty to thirty minutes after the acknowledgement of the mortgage. The parties to the transaction testified that the time was about an hour, and they further testified that there was no intention to execute the assignment until after the mortgage was acknowledged and filed for record.

Beddow, the son-in-law of the plaintiff, was made assignee. The taking of the assignment was advised by the attorney of the plaintiff. It was plainly a part of the same transaction as the mortgage. It was taken as a protection to the mortgagee; and, considering all the facts which we have stated, we think the court rightly held that the two instruments constituted a general assignment with a preference, and that the mortgage is void. The decree of the district court is AFFIRMED.