BOLLES ET AL. v. CREIGHTON ET AL.

73 199
102 730

1. **Assignment for Benefit of Creditors:** PREFERENCE BY PRIOR
   BILLS OF SALE: VALIDITY. C., being hopelessly insolvent, on the 2d
   of June, made an absolute bill of sale to D., of property in D.'s posses-
   sion as agent of C., in payment of his debt to D. The bill of sale was
   delivered to D. on the 5th of June, and D. subsequently sold the prop-
   erty and paid the debt, and had $223.51 left. On the 3d of June, C.
   made an absolute bill of sale of other property to M. to pay his debt to
   M. The latter took possession of the property on June 8th, and dis-
   posed of it, but did not realize enough to pay the debt. Neither D.
   nor M. seems to have delivered up to C. the notes evidencing his indebt-
   edness. After making these two bills of sale, and on the night of June
   3d, C. executed a general assignment of his other property for the
   benefit of his creditors, but left it with the notary before whom it and
   the bills of sale were acknowledged, and who transacted the business
   for C., with directions to hold it until he (C.) could go east to see his
   creditors, and that, if he could arrange and adjust his affairs, the
   assignment was not to be delivered at all. C. went east, but never
   returned, nor gave any further directions about his affairs. On June
   9th the notary filed the assignment for record. *Held* that the assign-
   ment did not become operative before June 9th, and that the bills of
   sale could not be regarded as a part of a series of transactions amount-
   ing together to a general assignment for the benefit of creditors, with
   preferences, and therefore void; and that, in an action to set aside the
   bills of sale on such ground, plaintiffs, who were also creditors of C.,
   were entitled to no other relief than a judgment against D. for the
   $233.51 remaining in his hands to the credit of C., as above stated.
   (See Iowa cases cited in opinion.)

*Appeal from Polk District Court*—HON. W. F. CONRAD,
Judge.

WEDNESDAY, OCTOBER 26.

THIS is an action in equity, and involves the validity of
certain bills of sale of personal property made by the defend-
ant Hugh R. Creighton to the defendants R. W. Dickey and
G. L. Mullins. The plaintiffs are creditors of Hugh R.
Creighton, and claim that the bills of sale are void, because
they are part of a series of transactions which together
amount to a general assignment for the benefit of creditors,
and give preference to Dickey and Mullins over the other

creditors of Creighton. There was a decree for the plaintiffs. The defendants Dickey and Mullins appeal.

*Bousquet & Earle* and *Baylies & Baylies*, for appellants.

*Kauffman & Guernsey, Berryhill & Henry, Mitchell, Dudley & Perry* and *C. L. Nourse*, for appellees.

ROTHROCK, J.—I. The bill of sale to the defendant Dickey was in these words:

"DES MOINES, IOWA, June 2, 1885.

" For value received, I hereby sell and deliver to R. W. Dickey the team of horses known as ' Ned ' and ' Frank,'— the former, a large gray horse about seven years old; the latter, a large bay horse about seven years old—and the harness usually used on them, and the newest wagon, and the last one purchased by me, now on the farm in Jefferson township—the team, wagon and harness, $350; six unbroken colts—two, three years old; two, two years old; and two yearlings—$500; twenty-five fat hogs, $250; six brood sows and pigs, sucking, $100; ten stock hogs, $50; five fat cows, $150; one fat bull, $35; twelve cows, and this spring calves, $480; one thousand bushels corn in crib on farm, $300; one hundred bushels rye in granary, $50; one brown six-year-old horse, ' Pete,' $100. All of said property is now on my farm in Jefferson township, Polk county, Iowa, and is hereby, and by the delivery of this bill of sale, delivered to the said William R. Dickey.

[Signed]                          " HUGH R. CREIGHTON."

It was executed by Creighton on the 2d day of June, 1885. Dickey was not present when it was signed by Creighton. It was handed to James H. Creighton to be delivered to Dickey, and it was actually delivered to him on the 5th day of June, 1885. At the time of its delivery Creighton was indebted to Dickey, as stated in a letter which was delivered with the bill of sale, and which was as follows:

"DES MOINES, IOWA, June 2, 1885.

"DICKEY: That mortgage you gave on that farm in Linn township has never been paid to the eastern man, and is now at the Citizens Bank here for payment. You better make the money out of your stock, and grain, etc., and pay it off. The stock, grain, etc., will also pay you what I owe you.

"Truly,           .           HUGH R. CREIGHTON."

Dickey had been in the possession of the property included in the bill of sale, as the agent of Creighton. He accepted the bill of sale on the 5th day of June, 1885, and from that time he held the possession of the property, and disposed of it as his own. The bill of sale transferred the title of the property to Dickey, in payment of Creighton's obligation to him. On the 3d day of June, 1885, Creighton executed to Mullins the following instrument in writing:

"JUNE 3, 1885.

"For value received, I hereby sell and deliver to G. L. Mullins the large brown mare and colt now on my farm in Jefferson township, Polk county, Iowa. And I hereby assign to him an account or promise to give a note for the gray colt he purchased at my sale last fall. The amount is $40, due October 16th, without interest, as compromised on. Mott is hereby authorized to make the note to you, or return you. This all to pay the note I owe you of $185.

[Signed]           "HUGH R. CREIGHTON.

"DICKEY: Deliver this mare and colt to G. L. Mullins.
"Truly,           HUGH R. CREIGHTON."

. This bill of sale and the mare and colt were delivered to Mullins on the 8th day of June, 1885. He took possession of the property, and sold the mare and colt for $125, and compromised the account on Mott for $35.

Creighton was largely in debt, and hopelessly insolvent, when these instruments in writing were made. He commenced the transfer of his property to his creditors, by bills of sale and deeds, on the 2d day of June, 1885, and con-

tinued executing instruments of that character on the next day.   Each of these instruments transferred specific property to a named creditor, and no two of them embrace the same property, either real or personal.   It appears to have been his purpose to parcel out his property to such of his creditors as he desired to secure.   After doing this, and on the night of June 3, 1885, he executed a general assignment of other property for the benefit of his creditors.   This general assignment was not then delivered to the assignee therein named.   It was left by Creighton with the notary public before whom the several instruments were acknowledged, and who was employed by Creighton for the purpose of transacting the business for him.   The directions given by Creighton with reference to the assignment were that it should be held until he could go east to see his creditors, and that, if he should arrange and adjust his affairs, the instrument was not to be delivered at all.   He took his departure the same night, and has not returned, and gave no further direction as to his affairs.   The notary public held the general assignment until June 9, 1885, when he filed it for record.   It will thus be observed that the general assignment did not become operative until after the defendants were invested with the possession of the property under their bills of sale.   It further appears that appellants had no knowledge that any assignment was contemplated until after they took possession of the property under the bill of sale.

In the month of August, 1885, the plaintiffs conceived the idea that the bills of sale held by appellants, and their right to the property thereunder, were wholly void.   They commenced actions in attachment against Creighton, and garnished Dickey and Mullins and others, and took their answers as garnishees, from which it appeared that they had disposed of the property in satisfaction of the debts due to them from Creighton.   In December, 1885, this action was commenced, in which the demand is made that the bills of sale and the general assignment be declared to be one and

the same transaction, and that all of them be declared to be null and void, as constituting a disposition of the entire property of Creighton, with the purpose and intent of giving preference to certain creditors, and with the purpose of cheating and defrauding creditors. It was also demanded that plaintiffs have judgment against appellants and other defendants for the value of the property received by them; and on the final hearing between the plaintiffs and appellants a judgment was rendered against Dickey for $2,300, and against Mullins for $170, and execution was awarded against them for said amounts.

The plaintiffs rely upon section 2115 of the Code as authority for sustaining their judgments. That provision of the law is as follows: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims." In other words, it is sought by the plaintiffs to make this statute perform the duty of making them preferred creditors, rather than the appellants, and to the extent of requiring defendants to pay to them every dollar received for the property made over to them by Creighton. There is no pretense that Dickey and Mullins are chargeable with any fraudulent purpose or intent in the transaction, and there is no foundation for the claim that they were not *bona fide* creditors of Creighton. Much stress is laid upon the fact that Creighton was an embezzler; and that he absconded with the intent to evade the consequences of his acts; that when he signed the bills of sale he intended to make a general assignment for the benefit of creditors; and counsel seem to be of opinion that it is a material question whether Dickey and Mullins accepted these bills of sale and the property in payment of the debts due them from Mullins, or whether they were accepted as mere securities for their debts.

We regard all these considerations as immaterial to the

rights of the parties.  As we have said, Dickey and Mullins acted in good faith.  We have set out the bills of sale to show just what the contracts between them and Creighton were.  They are absolute and unconditional sales for a certain purpose, which was the payment of the debts due by Creighton to appellants; and when the bills of sale, and the property therein described, were received by them, and sold, the debts were paid.  It is wholly immaterial what Dickey and Mullins intended.  Their intentions are controlled by the acceptance of the bills of sale and the property.  Having accepted the bills of sale and the property, they were bound by the terms of the sale to them.  Much is made of the fact that they did not intend to receive the property in full satisfaction, and that they did not surrender up the notes and evidences of debt which they held.  In the absence of a fraudulent purpose upon their part, these facts are wholly immaterial.  In all legal controversies between them and Creighton, and between them and any one attacking their title to the property, the fact that they took possession of the property under the bills of sale forever settles the question of the payment of the debts due to them, whether they retain their notes upon Creighton or not.  By accepting the property upon the terms of the bills of sale, their claims against Creighton were paid, and the payment was made before the general assignment had any operative force; before it was delivered, and while it was still under the control of Creighton, and in the hands of his agent.  It is well settled that such a transaction cannot be held void as being connected with a general assignment.  It has always been held by this court that such a transaction is not void under section 2115 of the Code.  As is said in *Van Patten v. Burr*, 52 Iowa, 518: " The insolvent, as long as he retains the *jus disponendi* of his property, may appropriate it to the payment of his debts, and may prefer creditors. He may use all of his property in this way, or he may so use a part, and make a general assignment of the remainder."

And see, also, *Lampson v. Arnold*, 19 Iowa, 479; *Fromme v. Jones*, 13 Id., 474; *Buell v. Buckingham*, 16 Id., 284; *Aulman v. Aulman*, 71 Id., 124; and *Van Patten v. Burr*, 55 Id., 224. And some of these cases hold that a mortgage of property to a creditor is as valid a transaction, under the statute, as an absolute payment of the debt by a sale or transfer of property.

Our conclusion is that the transfer of the property to the appellants was valid, and that it was not affected by the subsequent recording of a general assignment, and that the decree of the district court should be reversed. In his answer to the petition, and in his answer as garnishee, Dickey stated that the proceeds of the property sold to him paid the debts due to him, and left a balance in his hands of $223.51, and he offered to account for the same to whoever was entitled thereto; and in his testimony on the trial he stated that he did not think it was right to keep that, for it did not belong to him. This is the extent to which plaintiffs are entitled to judgment against him, and judgment will be entered therefor in this court, without interest or costs.

REVERSED.