## SUPPLEMENT.

[This case did not reach me in time to be published in its chronological order.—REPORTER].

A. T. ELWELL, Appellant, v. KIMBALL & CHAMP, *et al.*

**Assignment with Preferences.** A banking partnership, being insolvent, executed a number of deeds and mortgages to secure certain creditors, and a trust deed to plaintiff to secure depositors who were named therein as beneficiaries, plaintiff being a depositor for a nominal amount. A corporation of which the partners were controlling members, and to which the firm was largely indebted, also executed a general assignment. The trust deed, at the time of its execution, included practically all the property owned by the firm. *Held*, that the conveyances must be regarded as one transaction, constituting a general assignment, and therefore void, under Code, section 2115, declaring that no general assignment shall be valid unless made for the benefit of all the creditors.

**EVIDENCE.** The finding of the court that it was the intention of the parties to a deed of trust of substantially all the grantor's remaining property to make a general assignment, with preferences, is justified by evidence that the grantors were hopelessly insolvent, and were being pressed by creditors not secured by the deed. That the claims secured were based on misappropriations of trust funds by the grantors, except the personal claim of the trustee, which was evidently created in contemplation of the execution of the deed, and that the grantors made a number of other transfers the same day, or the day before.

**TRUST OBLIGATIONS.** The claims of the depositors named in the trust deed cannot be regarded as trust obligations, so as to entitle them to priority over the claims of general creditors.

*Rule applied.* A deed of trust is not taken out of Code, section 2115, providing that no general assignment by an insolvent for the benefit of creditors shall be valid unless made for the benefit of all creditors in proportion to the amount of their respective claims, because the claims preferred are based on misappropriations by the grantors of funds held in trust by a corporation of which they

were officers, and that they devoted the payment of deposits in a bank conducted by them, made after they knew they were hopelessly insolvent.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

## WEDNESDAY, DECEMBER 9, 1896.

SUIT in equity for the foreclosure of a trust deed. The Omaha National Bank, one of the defendants, filed an answer and cross-petition in which it was alleged that the trust deed was void. The decree sustained the claim set up in the answer and cross-bill, and the petition was dismissed. Plaintiff appeals.— *Affirmed.*

*Burke & Casady* and *I. E. Congdon* for appellant.

*Wright & Baldwin* for the Omaha National Bank.

ROTHROCK, C. J.—I. The case involves transactions of a partnership known by the firm name of Kimball & Champ, a corporation called the Kimball-Champ Investment Company, and other persons. There are a number of parties defendant. It is not necessary to set out their names. All necessary parties, including the said partnership and said corporation, were made defendants. The real contest, however, is between the plaintiff, who is the trustee named in the trust deed, and the Omaha National Bank. The case has not been argued in this court in behalf of any other party. The facts are quite voluminous, and the ultimate question for determination is whether the trust deed is void, under section 2115 of the Code, which is in these words: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit

of all his creditors in proportion to the amount of their respective claims." The district court made a finding of facts which included all of the pertinent acts and transactions of Kimball & Champ and of the investment company, as well as the facts attending the execution of the trust deed to the plaintiff. The findings of fact are as follows:

"*First.* That in or about the month of July, 1882, the defendants, John F. Kimball and George H. Champ, formed and entered into a co-partnership under the name and style of Kimball & Champ, composed of themselves, as individual members, both of whom resided at Council Bluffs, Iowa, and thereafter and thereunder engaged in the real estate, loan and banking business at Council Bluffs, Iowa, and continued therein up to and including the twenty-first day of July, 1891; that in or about the month of July, 1888, the defendant corporation, the Kimball-Champ Investment Company, was duly organized and formed, and thereafter, and up to the twenty-first day of July, 1891, was engaged in the business of loaning money, receiving deposits for investment, and transacting a financial business incident to loaning and investing money; that defendant John F. Kimball was president, defendant George H. Champ, vice-president and treasurer, and one C. B. Towle, secretary of said investment company, and Kimball and Champ and one George E. Gage, were its directors, and its principal place of business was at Council Bluffs, Iowa; that the secretary of the company resided at Council Bluffs, and Gage resided in New Hampshire and Massachusetts, and was the eastern manager of the company; that on, and for some time prior to, the first day of July, 1891, the Bank of Minden was a private bank, located at Minden, Iowa, and was owned and conducted by Kimball & Champ, one N. L. Trimble being the cashier.

"*Second.*  That the co-partnership of Kimball & Champ, and the Kimball-Champ Investment Company occupied the same office room, and used the same furniture, fixtures, vault, and money drawer, and post-office box, and employed the same hired help.

"*Third.*  That the following specific instruments were executed and filed for record at the date and by the parties indicated, to-wit:  (1) A trust deed by Kimball & Champ to N. L. Trimble, trustee, for the benefit of the trustee, as cashier of the Bank of Minden, and the depositors in said bank, executed July 21, 1891, and filed for record July 22, 1891, at 5:10 o'clock P. M.  (2) A mortgage on certain real estate, executed by Kimball & Champ to the Kimball-Champ Investment Company, on July 21, 1891, and filed for record July 22, 1891, at 4:20 o'clock P. M., to secure the payment of sixteen thousand five hundred dollars, subject to a prior mortgage on the same real estate, for seventy-five thousand dollars, to the Penn Mutual Life Insurance Company, and which mortgage on the same day was assigned by said Kimball-Champ Investment Company to George F. Wright, trustee, and which assignment was filed for record July 22, at 3:45 o'clock P. M.  (3) A mortgage on certain real estate, executed by Kimball & Champ to William Siedentopf, on July 21, 1891, filed for record on July 22, at 3:55 P. M., to secure the payment of three thousand six hundred and eighty-five dollars.  (4) A mortgage on certain real estate, executed by Kimball & Champ to J. P. Filbert, on July 22, 1891, at 4:10 o'clock P. M., to secure the sum of two thousand dollars.  (5) A deed to certain real estate, executed by Kimball & Champ to the Kimball-Champ Investment Company, on July 22, 1891, filed for record at 4:40 P. M.; consideration named, ninety-three thousand five-hundred dollars; and the same consideration covers, as alleged, other property conveyed on the same day;

and which deed is subject to a prior mortgage of sev-
enty-five thousand dollars to the Penn Mutual Life
Insurance Company, and one of sixteen thousand five
hundred dollars to the Kimball-Champ Investment
Company, assigned to George F. Wright, trustee. (6) A
general assignment by Kimball-Champ Investment
Company to M. F. Rohrer, executed on July 22, 1891,
and filed for record on the same day at 4:44 o'clock
P. M., for the benefit of all the creditors of said com-
pany, as provided by statute. (7) A trust deed of cer-
tain real estate, executed by Kimball & Champ to A.
T. Elwell on the twenty-second day of July, 1891, and
filed for record on the same day at 4 P. M.; the same
being the one sought to be foreclosed in this action.

"*Fourth.* That on said twenty-second day of July,
1891, Kimball & Champ were insolvent, and were heavily
indebted to the investment company; that on said
twenty-second day of July, 1891, out of funds of their
own and of the investment company, Kimball &
Champ paid off their own depositors, except A. T.
Elwell, and provided means for and directed the pay-
ment of the depositors of the Bank of Minden, and
thereafter they ceased to do business.

"*Fifth.* That on the twenty-second day of July,
1891, the plaintiff, as treasurer of the Council Bluffs
Theater Company, had on deposit with Kimball &
Champ, the sum of eleven dollars and fourteen cents,
and on that date deposited in his own right the further
sum of forty-five dollars; that prior to the said twenty-
second day of July, 1891, certain notes had been sent
to the Kimball-Champ Investment Company for col-
lection and remittance, and which had been collected,
or a secured note taken therefor, and the proceeds so
coming into the possession of the investment company
had not been remitted, but had been misappropriated,
and such misappropriation had existed for some weeks
prior to the said date, and the amounts mentioned

represent the amounts of such misappropriation, except those of plaintiff as treasurer, and in his own right.

"*Sixth.* That the plaintiff, on said twenty-second day of July, 1891, accepted the trust, and received the deed therefor, and at once filed the same for record; and thereafter he notified the beneficiaries herein named, of the said trust conveyance, and received acceptances thereof from all except J. J. Burns, hereinafter referred to.

"*Seventh.* That on said twenty-second day of July, 1891, Kimball & Champ were indebted to the defendant and cross-petitioners, the Omaha National Bank, in ——, the sum for which judgment was thereafter rendered; that prior thereto Kimball & Champ executed and delivered to said Omaha National Bank the notes upon which judgment was rendered, and the proceeds so realized were passed to the credit of the Kimball-Champ Investment Company, and the account so arising with the Omaha National Bank was continued in the name of the investment company; that Kimball & Champ did not have an account with the Omaha National Bank; that on July 22, 1891, the investment company, through its president and treasurer, drew out all the funds with the Omaha National Bank, except twenty-six dollars; that on the twenty-second day of July, 1891, the said Omaha National Bank commenced an action by attachment against Kimball & Champ, John F. Kimball, and George H. Champ, upon the notes given as above, and on the twenty-third day of July, 1891, levied upon the real estate covered by said trust deed; that thereafter, and on the nineteenth day of May, 1892, judgment was rendered in said action in favor of the plaintiff, and against said defendants for the sum of eighteen thousand one hundred and fifty-eight dollars and fifty

cents, two hundred and sixty-four dollars and ninety-four cents attorney's fees and costs; that on the twenty-third day of October, 1891, the interveners, Wright & Baldwin, commenced an action by attachment against the same defendants, upon account, to recover the sum of one thousand dollars, and thereafter levied upon the same real estate, subsequent and subject to the levy of the Omaha National Bank, and the record fails to show any further proceedings therein; that on the twenty-eighth day of October, 1891, the intervener, J. Sullivan, in an action against the same defendants, attached the same real estate, and on the fourteenth day of September, 1893, judgment was rendered therein for four hundred and eighty-seven dollars and fifty cents and costs, and thereafter said Sullivan died, and Catharine and John Sullivan were appointed executors to his estate, and duly substituted therein; that, under the general assignment of the investment company to M. F. Rohrer, the assignee took charge of the office and property and funds of said company, and controlled and managed the same until, upon order of court, the same were given over to a receiver appointed therefor, and which receiver was Charles R. Hannan.

"*Eighth.* That the property included in the trust deed to plaintiff was practically all the property owned by Kimball & Champ at the time of the execution of such conveyance; that at the time none of the creditors of Kimball & Champ were pressing their claims for payment; that on the twenty-first day of July, 1891, the plaintiff was solicited by Kimball & Champ to act as trustee in a conveyance for the benefit of certain of their creditors; that prior to the time when plaintiff made the deposit of forty-five dollars with Kimball & Champ, on the twenty-second day of July, 1891, as aforesaid, and accepted the trust deed in

question, he knew of the failing condition of the Kimball-Champ Investment Company, and of the troubles of Kimball & Champ; that he did not demand payment of the deposit already made, but made a further deposit with Kimball & Champ, and accepted the trust deed, as before found; that the other beneficiaries in the trust deed did not have any knowledge of any indebtedness to them, nor of the proposed trust conveyance, and were not pressing any claims upon Kimball & Champ for payment.

"*Ninth:* That Kimball & Champ executed and delivered to plaintiff the trust deed in question when they were insolvent and unpressed by creditors, and with the design and intent of hindering and delaying their other creditors in the collection of their claims against them, and that plaintiff had knowledge of such fraudulent intent and design, and participated therein by his acts in connection with said trust conveyance.

"*Tenth.* That, by their acts, Kimball & Champ undertook to pay off and discharge all their own depositors, and also those of the bank of Minden, have the investment company make a general assignment and convey all their remaining property to a trustee, for the benefit of all parties whose money or property had been misappropriated, with the intent and design to secure a preference among their creditors; to protect themselves, and to prevent the Omaha National Bank and other creditors from attaching their property; that the conveyance to plaintiff was not made in good faith, and for the sole purpose of securing creditors, but was made for the purpose of securing a preference to creditors, and placing all their property beyond the reach of those creditors, sustaining a different relation to them from the beneficiaries named; that Kimball & Champ, at the time they executed and delivered the trust deed in question, did not hope or intend to make

the payments provided for, or to make redemption of the property conveyed, but, under the guise or appearance of giving security, they treated and regarded the conveyance as a mode of making a final disposition of the property; that Kimball & Champ, by the trust deed to Trimble and the one to plaintiff, surrendered the dominion and entire control of practically all their property, and thereafter ceased to do business, and thereby sought to make a preference of creditors."

An examination of the evidence in the case fully sustains the findings of the district court. Indeed, it may be said that the material and essential facts, as therein stated, are so conclusively established by the evidence that they ought to be regarded as undisputed.

II.   Much of the argument of counsel of appellant is devoted to the proposition that the debts secured by the trust deed were such as might rightly be secured and paid in preference to the general creditors. The argument is founded on the thought that Kimball & Champ were trustees of the beneficiaries in the trust deed, and that the obligations were trust debts. The claims of the parties secured by the trust deed were sent to the Kimball-Champ Investment Company for collection and remittance, and the amounts due on some of them were collected, and secured notes were taken for others. No report of the collections and the taking of the secured notes was made to the parties entitled to the money and notes. On the contrary, they were "misappropriated," as found by the district court. There is no evidence that any of the proceeds of these collections were appropriated to the acquisition of any of the property included in the trust deed. As between the debt due to the Omaha National Bank and those due to the beneficiaries in the trust deed, there was no right of priority of preference which the beneficiaries in the trust deed could have enforced if there had been no

attempt made by Kimball & Champ to make a prefer-
ence.   This proposition is so manifestly correct that
we do not think it requires further consideration.   It
is true, the debts due depositors for money placed in
the bank, when every one connected with the partner-
ship knew that it was hopelessly insolvent, and the
laws for the punishment of embezzlement, no doubt,
were in the minds of the members of the partnership,
and these obligations were of a more sacred character
than their other debts.   But that they were entitled
to preference over other honest obligations cannot be
admitted.

III.   Section 2115 of the Code, above cited, has
been in force in this state since the adoption of the
Code of 1851.   Certain questions under it were con-
sidered in the case of *Cowles v. Ricketts*, 1 Iowa, 582.
From that time to this there have been scores
of cases in this court involving the application
of that statute to the disposition of property
made by insolvent debtors.   In the leading case of
*Burrows v. Lehndorff*, 8 Iowa, 96, it was held that,
where several instruments were executed consecu-
tively, each one subject to those preceding, and
together constituting a disposition of all the debtor's
property for the benefit of his creditors, but not in
proportion to the amount of their claims, the various
instruments will be considered as constituting one
transaction, and as therefore void under the statute.
There was no general assignment made in that case at
any time, but it was held that the making of the
instruments, which were bills of sale, was, in effect, a
general assignment.   And it has been held that a
debtor may, in good faith, secure the claims of a
creditor by a chattel mortgage, *Fromme v. Jones*, 13
Iowa, 474, or by an absolute sale of all his property in
good faith, *Buell v. Buckingham*, 16 Iowa, 284.
Another class of cases holds that a mortgage to one or

more creditors, made in good faith, is not void by the fact that the mortgage is executed in contemplation of insolvency, when the mortgagor afterwards executes a general assignment. *Lyon v. McIlvaine,* 24 Iowa, 9. See also *Aulman v. Aulman,* 71 Iowa, 124; *Lead Co. v. Haas,* 73 Iowa, 399; *Bolles v. Creighton,* 73 Iowa, 199, and many other cases. Some of the other cases present about the same state of facts, but in the large majority of them the transactions are such that the attending facts, such as the intention of the debtor to dispose of all of his property to a part of his creditors, the knowledge of the preferred creditors of such intention, and the time and circumstances attending the transfer, are considered in determining the question as to whether the acts of the debtor, in effect, constitute a general assignment with preference. In *Bank v. Crittenden,* 66 Iowa, 237, it is said: "The court has frequently heretofore had occasion to determine the legal effect of transactions in which insolvent debtors have made conveyances of all their property for the benefit of a part of their creditors, and it is settled by the cases that the question whether such conveyances should be regarded as an assignment for the benefit of creditors, or a mortgage for the security of particular debts, is to be determined by the intention of the parties, as it may be ascertained from the circumstances of the transaction." It will thus be seen that every case must be determined by a consideration of the facts attending the acts of the parties. Applying the rule above stated to the established facts in this case, we have no doubt that the court rightly held the trust deed to be void. We need not cite the facts, further than to refer to the relation between the investment company and the partnership of Kimball & Champ. They were both hopelessly insolvent,—so much so that it appeared to Kimball & Champ that

practically all of their property must be at once devoted to paying or securing debts for which, if not liquidated in some way, they might incur criminal liability. While the instruments disposing of their property were not as nearly related to each other in point of time as in the case of *Burrows v. Lehndorff*, *supra*, and other cases, yet the different transactions were as nearly simultaneous as it was practicable to make them. The trustee selected to represent the beneficiaries in the trust deed was a mere nominal depositor in the bank, and nearly all of his deposits were made under such circumstances as to induce the belief that it was done to qualify him to make the claim that the instrument was made, not only for the benefit of the parties to be secured, but for himself as well. Our conclusion is that the decree of the district court should be, and it is, AFFIRMED.