GERING et al. v. LEYDA.

(Circuit Court of Appeals, Eighth Circuit.   March 31, 1911.)

No. 3,418.

1. BANKRUPTCY (§ 302*)—RECOVERY OF PREFERENCE—PETITION—SUFFICIENCY.
A petition by a trustee in bankruptcy to recover a preference, which alleges that at the time of the transfer the bankrupt was hopelessly insolvent, and his indebtedness amounted to over $24,000, and that the only unexempt property then owned by him was the stock of merchandise conveyed to defendant, sufficiently charges that at the time of the transfer the bankrupt was indebted to general unsecured creditors entitled to share in the preference recovered, and states a good cause of action.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 302.*]

2. BANKRUPTCY (§ 302*)—RECOVERY OF PREFERENCE—ACTION—PLEADING AND PROOF.
A trustee in bankruptcy suing to recover a preference need not plead and prove that claims against the bankrupt have been filed and allowed, but it is only necessary to plead and prove that the bankrupt is indebted to general creditors who may share in the preference recovered.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 302.*]

3. ESTOPPEL (§ 68*)—EQUITABLE ESTOPPEL—CLAIM IN LEGAL PROCEEDING.
A defendant, in an action by a trustee in bankruptcy to recover a preference, who successfully objected to the proof of indebtedness on the ground that the same was immaterial, is estopped from claiming that evidence of such indebtedness is requisite to sustain the cause of action.
[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

4. BANKRUPTCY (§ 303*)—RECOVERY OF PREFERENCE—EVIDENCE—SUFFICIENCY.
In an action by a trustee in bankruptcy to recover a preference, evidence *held* to justify a finding that the transfer enabled defendant to obtain a greater percentage of his debts than other creditors of the bankrupt of the same class, and that defendant was charged with knowledge of the bankrupt's insolvency, authorizing a recovery.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

5. BANKRUPTCY (§ 305*) — RECOVERY OF PREFERENCE — EVIDENCE — ADMISSIBILITY.
Where, in an action by a trustee in bankruptcy to recover a preference resulting from a transfer of the bankrupt's stock of merchandise and open accounts, the parties at the trial stipulated that the reasonable market value of the stock in controversy, on the date of the transfer, was a specified sum, such sum measured the liability of defendant.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 305.*]

6. APPEAL AND ERROR (§ 263*)—INSTRUCTIONS—EXCEPTIONS—REVIEW.
Where no exception was taken to the court's charge, errors thereon are not available on writ of error.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532; Dec. Dig. § 263.*]

7. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.
It is not error to refuse a requested charge covered by the charge given.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

In Error to the District Court of the United States for the District of Nebraska.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by John M. Leyda, trustee in bankruptcy of Henry Herold, against Henry R. Gering and another. There was a judgment for plaintiff, and defendants bring error. Affirmed.

Matthew Gering (Edmund C. Strode, on the brief), for plaintiffs in error.

Henry H. Wilson (Elmer J. Burkett and Elmer W. Brown, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and DYER, District Judge.

DYER, District Judge. This is a suit brought in the District Court of the United States for the District of Nebraska, by defendant in error as trustee of the estate of Henry Herold, bankrupt, against plaintiffs in error and the First National Bank of Plattsmouth, Neb., seeking to recover an alleged preference under the bankrupt law. This case was tried before a jury. The trial court directed a verdict in favor of the defendant First National Bank of Plattsmouth, Neb., and the jury returned a verdict in favor of the defendant in error and against plaintiffs in error in the sum of $3,202.24, upon which judgment was rendered. Plaintiffs in error thereupon brought the case to this court by writ of error. The evidence adduced at the trial tended to show the following facts: For some years prior to October, 1906, the bankrupt, Henry Herold, had been conducting a general store at Plattsmouth, Neb., and on December 4, 1906, he was adjudged a bankrupt upon a petition in bankruptcy filed against him by creditors on October 16, 1906, and defendant in error was appointed his trustee in bankruptcy. The plaintiffs in error, Henry R. Gering and Matthew Gering, are brothers, and brothers-in-law of the bankrupt. Prior to 1906, Henry Gering became surety for the bankrupt upon three notes aggregating $3,100, which were discounted by the bankrupt at the First National Bank of Plattsmouth, Neb.; and in February, 1906, Henry Gering became bankrupt's guarantor in the sum of $1,200 to Smith, McCord, Townsend Company, of Kansas City, Mo. In August, 1904, Matthew Gering became surety for bankrupt upon a note for $1,500, which was discounted by bankrupt at the First National Bank of Plattsmouth, Neb. On October 5, 1906, a representative of the Smith, McCord, Townsend Company of Kansas City called upon bankrupt and demanded payment of an indebtedness of about $870 due his employer, and, failing to obtain payment from bankrupt, requested Henry Gering to pay the indebtedness as guarantor. On October 6, 1906, a conference was held between the bankrupt, Henry Gering, and Matthew Gering, at which bankrupt's business affairs were discussed. At this interview each of the Gerings learned for the first time that the other had become surety for bankrupt's indebtedness. The Gerings testified that at this interview they questioned bankrupt as to his financial condition, and that he told them that in addition to the indebtedness owing to the First National Bank of Plattsmouth, and to the Smith, McCord, Townsend Company, he owed only about $1,000 to $1,200; that he owned his stock of goods worth "around $5,000," and his residence in Plattsmouth, worth from $5,500

to $6,000, and incumbered for $2,500. The bankrupt testified that he told the Gerings that he only owed from $1,000 to $1,200 in addition to the notes held by the bank, and that he had been offered $5,500 for his residence, and that he proposed to accept the offer, and with the proceeds he thought he "could either make a settlement or clean up the balance of the indebtedness." It was thereupon agreed that the bankrupt would give Henry and Matthew Gering a bill of sale for his stock of goods and outstanding accounts, and that the Gerings would pay the indebtedness due the bank upon the notes upon which they were sureties, then amounting to $4,842.03. In accordance with this arrangement, the key to the store was turned over to Henry Gering on Saturday, October 6, 1906, and a written bill of sale was executed and delivered on the following Monday, October 8, 1906. By this bill of sale the bankrupt conveyed to the Gerings his entire stock of goods and all his outstanding book accounts. The bankrupt had taken no inventory of his stock of goods for several years, and no inventory was taken at the time of the transfer to the Gerings; but the Gerings requested three merchants of Plattsmouth to look at the stock and give their opinion of its value, and these men, after spending about half an hour in making a general inspection of the stock, reported that in their opinion it was worth from $3,500 to $4,500. The stock of goods was afterwards sold by the Gerings and the notes held by the bank paid by them. It appeared from the evidence that on October 6, 1906, the bankrupt was insolvent and owed debts greatly in excess of the amount stated by him to the Gerings; that various creditors were then pressing the bankrupt for payment of their claims; that the bankrupt's account at the First National Bank of Plattsmouth had been overdrawn some $400 for more than a month; that the notes held by the bank and upon which the Gerings were sureties were past due; and that the bank had been urging that the notes be paid. The evidence tended to show that the Gerings made no inquiry into the financial condition of the bankrupt except to ask him what his condition was, and the evidence further tended to show that the bankrupt had in his store at Plattsmouth bills for invoices which showed the amount of his indebtedness to his various creditors.

[1] It is contended in behalf of plaintiffs in error that the trustee's petition failed to state a cause of action entitling him to recover a preference because it is not averred therein that at the time of the commencement of the action the claims of any creditors had been proved and allowed against the estate of the bankrupt. In our opinion it was not necessary for the trustee to allege and prove that claims of creditors had been filed and allowed against the estate of the bankrupt prior to the commencement of the suit. The trustee's petition alleged that at the time of the transfer in question the bankrupt "was hopelessly insolvent, and that his indebtedness amounted to over $24,000," and that the only unexempt property then owned by him was the stock of merchandise conveyed to plaintiffs in error, and we are of opinion that these allegations sufficiently charged that at the time of the transfer complained of the bankrupt was indebted to general creditors, who were not secured, and who were entitled to share in

the preference recovered. We think the trustee's petition stated a good cause of action, for the recovery of a preference. Swarts v. Fourth Nat. Bank, 117 Fed. 1, 54 C. C. A. 387; Coder v. McPherson. 152 Fed. 951, 82 C. C. A. 99; Wright v. Skinner Mfg. Co., 162 Fed. 315, 89 C. C. A. 23; Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960; In re Leech, 171 Fed. 622, 96 C. C. A. 424.

[2] (1) It is not necessary in such a case for the trustee to plead and prove that claims against the bankrupt have been filed and allowed.

(2) It is necessary for him to plead and prove that the bankrupt is indebted to general creditors who may share in the preference recovered.

(3) The complaint sufficiently alleges that the bankrupt was indebted in an amount very much in excess of the claims secured by the preference so that it is sufficient in this regard.

[3] (4) The defendants below, by objecting to the proof of indebtedness of the bankrupt on the ground that such proof was immaterial and obtaining a ruling sustaining this objection, estopped themselves from claiming that evidence of such indebtedness was requisite to sustain the trustee's cause of action, notwithstanding this ruling, sufficient evidence crept into the case to constitute substantial evidence of indebtedness of the bankrupt to general creditors not secured.

Plaintiffs in error further contend that the evidence is insufficient to sustain the judgment. In support of this contention it is urged that no evidence was submitted which warranted the jury in finding that plaintiffs in error, at the time of the transfer complained of, had reasonable cause to believe that the bankrupt intended, by such transfer, to give them a preference, and that the evidence did not show that the effect of the transfer was to enable plaintiffs in error to obtain a greater percentage of their debts than other creditors of bankrupt of the same class. An attentive consideration of the record has led us to conclude that these objections are not tenable.

[4] The facts known to plaintiffs in error at the time the bankrupt transferred his stock of goods to them were such as to put them on inquiry as to the bankrupt's solvency, and, under the facts and circumstances in evidence, it was for the jury to determine whether plaintiffs in error were to be charged with knowledge of bankrupt's insolvency. Pittsburg Plate Glass Co. v. Edwards, 148 Fed. 377, 78 C. C. A. 191; Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 99; Houck v. Christy, 152 Fed. 612, 81 C. C. A. 602; McElvain v. Hardesty. 169 Fed. 32, 94 C. C. A. 399; First Nat. Bank of Phil. v. Abbott, 165 Fed. 852, 91 C. C. A. 538; Clingman v. Miller, 160 Fed. 326, 87 C. C. A. 278; In re Knopf (D. C.) 146 Fed. 109. The evidence submitted in the trial court warranted the jury in concluding that the transfer of the stock of goods and open accounts to plaintiffs in error would enable them to obtain a greater percentage of their debts than other creditors of bankrupt of the same class. The evidence showed that, at the time of the sale of the stock and accounts to plaintiffs in error, the bankrupt was indebted to various other creditors whose claims were unsecured, and the evidence tended to show that, besides the stock of merchandise and accounts, the bankrupt owned no other prop-

erty that was not exempt from execution. If the showing made by the trustee in the trial court as to the extent of the bankrupt's indebtedness to general creditors was not as full as it might have been, the plaintiffs in error are not in a position to complain of the lack of evidence on this subject, for the trustee offered evidence tending to show the indebtedness of the bankrupt at the time of the transfer complained of, and plaintiffs in error objected to the admission of the evidence on the ground that it was immaterial and obtained from the trial court a ruling sustaining their objection. By taking this course the plaintiffs in error estopped themselves from claiming that evidence of the indebtedness of bankrupt to general creditors at the time he transferred his stock of goods to them was necessary to sustain the trustee's cause of action.

[5] It is further contended that the trial court erred in excluding evidence offered by plaintiffs in error tending to show the amount received from the sale of the stock of merchandise, the manner in which it was sold, and the expense incurred in making the sale. We think the trial court was right in excluding this evidence, for it was stipulated by the parties at the trial that the fair and reasonable market value of the stock of merchandise in controversy on the 6th day of October, 1906, was $3,000; and, if plaintiffs in error were liable, this sum was the measure of their liability. McElvain v. Hardesty, 169 Fed. 32, 94 C. C. A. 399.

[6] It is further contended that the trial court erred in its instructions to the jury; but, as no exception was taken by plaintiffs in error to the court's charge, these alleged errors are not available here. Levi v. Mathews, 145 Fed. 152, 76 C. C. A. 122; Yates v. United States, 90 Fed. 57, 32 C. C. A. 507.

[7] Error is also assigned because of the refusal of the trial court to give certain instructions requested by plaintiffs in error. Upon a careful review of the instructions refused by the trial court, we have reached the conclusion that they were properly refused, either because they erroneously declared the law, or because the propositions involved were covered in the charge given by the court.

In our opinion the judgment of the trial court should be affirmed, and it is so ordered.